# Francis Gilman v. Hyacinth Riopelle.

*Authentication of U. S. documents: Certificates: State law.* The mode of authenticating the documents, records and proceedings of any of the departments, or courts of the United States is governed by the laws of the United States, and by the practice of such departments and courts, and not by the statutes of a State. — *Lacey v. Davis*, 4 *Mich.* 140.

*Official certificate: Evidence to what extent.* In an action of ejectment, a paper purporting to be a copy of a surveyor's field notes on file in the United States Land Office, and referring to several distinct land claims, was offered in evidence, under an objection that the official certificate attached did not cover all of the claims contained therein.

*Held*, that it does not follow that because something is incorporated in such a paper which the ;certificate does not cover, the paper is to be wholly excluded.

The fact that a portion of the recitals are not authenticated may be a sufficient reason why such portion should not be read, but cannot constitute a ground for rejecting another and entirely distinct and separate portion which is properly authenticated.

*Evidence: Consideration in conveyance: Value of premises.* Where the question in dispute is, whether a quit claim deed conveyed the fee in the land described, or a leasehold interest only, it may be proper to put in evidence, to show that the real value of the land was many times greater than the consideration stated in the deed.

*Evidence: Hearsay: Proof of tenancy.* Where, in ejectment one party claims that a person who had been in possession of the land in dispute occupied, as owner, while the other claims that he was in under a contract of lease, it is proper for the latter to give evidence of a conversation between a claimant to the land and such person, before the latter took possession, tending to show negotiations for a leasing by him. Proof of such a conversation would not be hearsay, and it would be as competent to make it by a bystander as by the parties thereto.

*Evidence of motive.* A witness cannot be asked why another party "wished" a certain act done which he directed, unless some statement of his purpose or motive accompanied the direction.

*Tax-titles based upon unpaid taxes by one in possession: Evidence.* A deed given on a sale of lands for taxes cannot be excluded as evidence, on the ground that the tax purchaser was in possession when the tax accrued, if the fact of such possession is in dispute, and not admitted by the claimant under the tax title.

Nor if the possession, at the time were undisputed, would it be sufficient ground for rejecting the deed, as that fact would go to the validity of the deed, and not to its admissibility.

*Tax-Title: Statute of Limitations: Possession: Evidence.* The ten years limitation in the tax law of 1842—*Laws of 1842, p. 133*—does not apply in favor of a party who was in possession under some other claim, at the time of obtaining the tax title. It intends that the party who seeks the benefit of the limitation shall enter, or shall have entered, into the actual possession under his tax deed.

*Held, also*, that this is an objection going to the effect and sufficiency of the deed, and not to its admissibility.

*Conveyance; Description of premises.* Where definite and permanent boundaries are

given, a deed must be considered to convey all the land within those bounda-
ries, notwithstanding the quantity is much greater than that mentioned.

*Conveyance: Description for purposes of assessment.* The premises in a tax deed
were described as "that part of private claim 61 lying east of the north branch
of the River Ecorse, in township 3 S. of R. 11 E."

It was objected that this description was insufficient for the purposes of assess-
ment under the tax law of 1843, because not being the subdivision of any
section authorized by the United States, for the sale of public lands, it was
necessary under Section 2 (Laws of 1843, p. 66) "to state the name or number
of the lot or tract, or by what other lands it is bounded."

*Held*, that the description was sufficient. The requirement that the premises
shall be described by the lands which bound them, has reference to those cases
in which the tract is not known by name or number, and in which such a de-
scription would be most likely to attract the attention of the person interested
in the payment of the tax.

*Evidence: Custom as to gift of land to eldest son.* Evidence of a custom among
old French settlers to give their farms to their eldest sons, is not admissible
to establish such a gift in a particular case, where no direct evidence of the gift
has been given.

*Heard January 7.    Decided April 13.*

Error to Wayne Circuit.

This was an action of ejectment to recover 20 $\frac{74}{100}$
acres upon Private Claim 61, in town 3 south, range 11
east, being Ecorse, Wayne County; and one half acre nearly
adjoining. Both parcels lie east of the north branch of the
Ecorse river, and between the river and the northern line
of town 3. The claim seems never to have been patented
to any person by the U. S. Government. Plaintiff claims
title through one Ambroise Riopelle, whom he alleges claimed
the land at, and before, the evacuation, of this country by
the English, under the *Jay Treaty* in 1796. That Domin-
ique Riopelle, a younger son of old Ambroise, also claimed to
own, and exercised acts of ownership over the whole claim,
although no deed passed from Ambroise to him; and that
Dominique deeded to plaintiff and Alexander, his brother,
which brother quit-claimed to plaintiff that part in question
in this suit. Plaintiff claimed that both Alexander and
himself had exercised acts of ownership over the land, and
that the possession of defendant and those through whom
he claimed, was but a tenancy under plaintiff or his
grantors.

Defendant claimed a two-fold title:

*First.*—Through Toussaint Riopelle, who was the eldest son of old Ambroise Riopelle, who, it is claimed entered and exercised acts of ownership after his father's death; through Sophia Vermet, wife of Joseph Vermet, and daughter of Toussaint, who entered in 1832, claiming title in fee, and who, with Joseph Vermet, her husband, conveyed to Abraham Blanchet by deed, July 8, 1845, who conveyed to Augustine Vieux, by deed, January 28th, 1852, who conveyed to Francis Gilman, defendant, by deed, December 20, 1852. The possession, since July 8, 1845, of Blanchet, Vieux and defendant, has been uninterrupted, and, as defendant insists, under claim of ownership.

*Second.*— Under a tax deed from the State of Michigan, dated November 30, 1846, for tax sale made October 6, 1845, for delinquent taxes for the year 1843.

Judgment was rendered for plaintiff.

The exceptions to the rulings of the Court are stated in the opinion.

The following are the errors assigned:

1. The Court erred in admitting in evidence the copy of the field notes of Private Claim 61, and the adjoining claims 118 and 119, with the certificate thereto attached.

2. The Court erred in admitting the evidence of defendant in error as to the value of the land in controversy in 1845, when it was first fenced.

3. The Court erred in permitting Alexander Riopelle to testify to a conversation between Joseph and Antoine Vermet, when Joseph came to Antoine to see about getting the place.

4. The Court erred in permitting Antoine Vermet to answer the question, "why did Dominique wish the (Laribell) house thrown down?"

5. The Court erred in excluding from evidence the Tax Deed from the State of Michigan to Abram Blanchet, dated November 3, 1846.

6. The Court erred in refusing to permit Burdeno to

answer the question, "what was the custom among the old French settlers as to giving their farms to their eldest sons?"

*H. M. & W. E. Cheever,* for plaintiff in error.

1. The certificate of the copies of the field notes was defective. It purported to be a certificate of the notes of but one of the Private Claims in question.

2. The evidence touching the value of the land in 1845, we submit, was irrelevant and tended to lead the jury from the true question in issue. The true principle upon which this kind of testimony should be excluded is, that it does not relate to the issue, and tends to call attention from the point in issue, to excite prejudice or sympathy, and the adverse party is not prepared to rebut it.—*1 Greenl. on Ev.* § 52.

"It is not proper to allow irrelevant testimony to be considered when it can at all tend to embarrass the cause or mislead the jury."—*Penn. Mining Co. v. Brady, 14 Mich.* 265.

3. The conversation between Joseph and Antoine Vermet, in which statements prejudicial to his claim of title were made by Joseph, was inadmissible, as Joseph was not in possession of the land at the time. This action was based on possessory title, and the declarations of the parties, or those under whom either of them claimed, were admissible only as qualifying, or affecting their acts of possession. They are received to show the the nature of the possession. Hence we say, the thing to be qualified must exist, in order to admit the qualification. To admit the statements or declarations of a party, a stranger to the record—made at a time when he is not in possession—is, in effect, to admit hearsay evidence without qualification. These declarations are only relieved from the general disqualifications which attends hearsay evidence, when they possess the saving characteristic of concurrent possession. In other words, the ad-

missions must be those of an occupant.—*5 Carr. & P. 575; 2 J. J. Marsh. 380.*

The rule seems to be almost without exception that occupancy must accompany the statements.—*Jackson v. Vredenburgh,* 1 *Johns.* 158; *Church v. Burghardt,* 8 *Pick.* 327; *Reed v. Dickey,* 1 *Watts,* 152; *Norton v. Pettibone,* 7 *Conn.* 319; *Jackson v. Murray, Anthon,* 105; *Inhabitants of West Cambridge v. Inhabitants of Lexington,* 2 *Pick.* 536; *May v. Jones,* 4 *Litt.* 21; *Jackson v. Meyers,* 11 *Wend.* 533; *Hall v. Gittings,* 2 *Har. & J.* 380; *Little v. Libby,* 2 *Greenl.* 242; *Smith v. Martin et al.* 17 *Conn.* 399; *Hannon v. Pettitt,* 5 *Barn. & Adol.* 223; *Carne v. Nicoll,* 1 *Bing. N. C.* 430; *Doe dem. Manton v. Austin,* 9 *Bing.* 41; *Doe dem. Baggaley v. Jones,* 4 *Campb.* 367; *Greenl. on Ev.* §§ 189 *and* 109.

A few cases have held the contrary, but they have been afterwards given up by the courts which decided them.—*1 Phil. on Ev. (C. & H. notes),* 196.

And some authorities limit the statements to the time of entry.—*Brabaker v. Poage,* 1 *Monroe,* 125.

4. It was an error to permit the witness Antoine Vermet to testify to the motives of Dominique Riopelle in wishing the Larribel house torn down. This is the fourth assignment.

While the actions or declarations of a party in possession are clearly admissible as qualifying such possession, we submit a witness cannot testify to the motive which influenced such acts or declarations. The motive is to be found by the jury from the actions and declarations. It is for them to say whether such words or deeds evince a claim of title or not.

5. The tax deed was improperly excluded. The objections to its introduction were:

1st. The description was too general, in that while it purported to convey all that. part of the private claim east of

the north branch of the Ecorse river—which was some 160 acres—it limited the amount to $20\frac{74}{100}$ acres.

We reply to this:

*a.* The description is limited to that part of the claim east of the north branch of the Ecorse river in Township 3, S. of R. 11 E. and this is about one-half of that part of the claim lying east of the north branch of the Ecorse, or about 80 acres.

*b.* But the principle is the same whether 80 or 160 acres, and we say, the description would be complete if the words "containing $20\frac{74}{100}$ acres more or less" were omitted. These words cannot limit the amount to $20\frac{74}{100}$ acres.

In construing deeds, effect will be given to every part of the description if practicable, but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances in the description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as mistaken.— *Jackson v. Moore, 6 Cow. 717; Emerson v. White, 9 Fost. 499; 2 Parsons on Cont. 26, 62 and note; Broom's Leg. Max. 403, 409; Anderson v. Baughman, 7 Mich. 77; Cicott v. Gagnier, 2 Mich. 381.*

This tax deed purported to convey all that part of private claim 61 lying east of the north branch of the Ecorse river, in township 3, S. of R. 11 E. This was capable of positive location. The $20\frac{74}{100}$ acres and the one acre in dispute lie in this tract of 80 acres somewhere. The record, then, we say, was notice to plaintiff when he took his deed from Dominique, July 1, 1848, of the real land intended to be covered by the tax deed.— *Cooper v. Bigley, 13 Mich. 463.*

2. The second objection to the introduction of the tax deed was, that the description was not in accordance with the statute relative to the assessment and collection of taxes.

We insist it was. The deed was given November 30, 1846, based upon a tax sale made October 6, 1845, for delinquent taxes for the year 1843.

The taxes were assessed then under the act of March 8, 1843, which took effect March 18th, 1843. By the provisions of sec. 12 of this act, the assessments were required to be made between the third Monday of April and the fourth Monday of May.—*Laws of 1843, p. 60.*

By the provisions of this act the description of real estate is required to be as · follows:

When the land was not a government section or subdivision of a section:

" If less or other than any such subdivision, it shall state the name or number of the lot or tract, or by what other lands it is bounded."—*Act of 1843, § 16.*

This deed described the land as " Private Claim No. 61," and came within the requirements of the statute.

3d. The third objection to the tax deed was that Blanchet was himself in possession of the land when the alleged tax title accrued.

The facts do not sustain this objection. The objection is based upon the doctrine as enunciated by this court, that one in possession of lands, claiming title after taxes having become a lien thereon, can acquire no additional interest by suffering the land to be sold for such taxes and becoming the purchaser.—*Lacey v. Davis, 4 Mich. 140 ; Tweed v. Metcalf, Id. 579.*

But this doctrine has no application to this case. This sale was for delinquent taxes of 1843. Under the act of 1843 the assessment became a lien from the 1st of November of that year (1843.)—*Act of 1843, § 29.*

Blanchet did not go into possession of this land until July 8th, 1845, nearly two years after this tax had become a lien upon the land.

And this tax sale was made October 6th, 1845, about two years after this assessment became a lien, and only three months after Blanchet had acquired title, and gone into possession.

Hence we say, Blanchet was a stranger to this land

when the tax was assessed—when it became a lien—when it was returned as delinquent to the Auditor General—when it was sent back for sale to the County Treasurer—when it was bid in by the state—when the time of redemption expired, and when it was sent back to the County Treasurer a second time for sale.

So the reason of this doctrine, which has its foundation in the obligation of a person to pay taxes on property in his possession, and which he claims to own, fails.

, If the tax deed was admissible, it was a complete bar to plaintiff's recovery. By the statute passed in 1842, plaintiff's action is barred if not brought within ten years. —*Laws of 1842, p. 133, §§ 1 and 2.*

This act is by special enactment made applicable to the law of 1845.—*Laws of 1845, p. 82, § 16.*

Plaintiff's right of action accrued July 8th, 1845, when Blanchet, under whom defendant claims, went into possession. This ten years' limitation was not repealed until the Revised Statutes of 1846 took effect, which was March 1st, 1847.

This action, not having been brought within ten years after entry and possession under color of tax title, is governed by the act of 1842.—*Perry v. Hepburne, 4 Mich. 165.*

*C. N. Riopelle,* and *Levi Bishop,* for defendant in error.

1. The documentary evidence, from the General Land Office at Washington, was proper and sufficient in form.

This evidence, in regard to the private claim in question and of the adjoining claims, was offered for the purpose of fixing the boundaries of the claims; and no objection was made to it, except with reference to the form of its authentication.

The certificate is a printed form, which has been in use for all purposes of evidence, ever since the departments of the Federal Government have had existence.

The document, taken altogether, is a regular, legal

exemplification, technically, so called, and it therefore imports absolute verity. It imports, in the language of the certificate itself, that it is a true, a literal, and a perfect copy of the papers, and of the whole of the papers exemplified. It would not be an exemplification unless it had this import and effect: such is the rule of evidence on the subject.—*1 Greenlf's Ev. 501; 1 Bouv. Law, Dic. 499; 1 Starkie Ev. 189; 1 Phillip's Ev. 384.*

These documents, thus certified from the several Departments at Washington, are expressly authorized by several acts of Congress, and are declared to be evidence in all courts of justice the same as the originals would be if produced.

As to the *State Department.*—*Act of Sept. 15, 1789, 1 Statutes at Large, 69; Cited note a, on page 267 of Brightly's Digest.* As to the *General Land Office.*—*Act of April 25, 1812, 2 Statutes at Large, 716; Brightly, p. 462, § 3, 463, § 9, 464, § 26; Same, 463, § 9.* As to *Land Titles* especially.—*Act of January 23, 1823, 3 Statutes at Large, 721; Cited, § 14, on page 267 of Brightly.* As to *Treasury Department.*—*Act of Feb. 22, 1849, 9 Statutes at Large, 347; Brightly 267, § 16.* *War, Navy, Attorney General* and *Post Office* Departments.—*Brightly, § 7, p. 267.* *Department of the Interior.*—*Act of May 31, 1854, 10 Statutes at Large, 297; Cited, Brightly 267, in Note.*

Such being the law of the United States, what has the statute of this state to do with the subject?

The objection to this evidence seems to have been based on § *71, p. 458, of R. S. of 1846; 2 C. L. Art. 4,308.*

The statutes of this state cannot control Federal legislation upon the subject.

Upon an examination of § *71* and what follows, it abundantly appears that it has reference solely to documentary evidence created and existing in this state; or if it was intended to have reference to extra territorial evidence, it could only have been intended to provide for cases where

the law did not otherwise provide for the authentication of such evidence.

It is further to be observed that the papers in question do not derive their character as evidence from the laws of Michigan. They would have been evidence if no such institution as the State of Michigan had existed.

2. The question put to the plaintiff below as to the value of the land in 1845, was clearly competent under the theory of the case, which we sought to establish.

If the forty acres was worth $1,000, the jury might well infer that Blanchet, in paying but $100, was buying only a leasehold interest, instead of a fee as claimed by the defendant below.

3. The conversation between Joseph and Antoine Vermet, which we showed by Alexander Riopelle, was not in the nature of an admission made by a person in possession, or by parties to the record. Such was not its character at all.

The testimony was introduced to show that Joseph Vermet, under whom the defendant claimed, went on to the place in question, under an express agreement, as the tenant of Dominique Riopelle, from whom we derived the title.

If the defendant, or those under whom he claimed, went on to the place as a tenant of him from whom the plaintiff claimed, he and they could not dispute our title, even if we had none; and this was what this testimony tended to prove.— *Taylor's L. and T.* §§ *89, 91; Angell on Lim.* § *442.*

4. The testimony as to tearing down the house partly built by Larabelle, was to show an act of ownership by Dominique Riopelle in pursuance of his claim of title. This was competent in connection with our testimony that Dominique claimed to own the farm, and leased it to Joseph Vermet, under whom the defendant claimed.

Occupancy and acts of ownership on even a part of a tract of land are evidence tending to show possession of the whole. — *2 Bouv. L. D. 351,* § *45; Elliot v. People, 10*

*Peters, 413, 442, 3, 4; Moss v. Scott, 2 Dana, 275 and cases cited; 1 Cow. 286; Jackson v. Vermilyea, 6 Id. 681.*

5. The tax deed, dated in 1846, for the tax of 1843, was given to Blanchet.

*a.* The first objection to it is that Blanchet was in the occupancy and possession of the land from 1842 to 1852, covering the whole time of the accrual of the tax title, claiming title, according to the theory and case of the defence, from Joseph Vermet and wife. The tax title is therefore bad under the decisions of this court. — *Lacey v. Davis, 4 Mich. 140, 150 ; Tweed v. Metcalf, 4 Id. 579, 586.*

If a party who enters on land after a tax has become a lien upon it, cannot, by bidding it off at the tax sale, acquire a cumulative title, much less can he do so, who is in possession during the whole time, back, even prior to the assessment.

*b.* The ten years' limitation provided by section 2 of the act of 1842, page 133, does not apply to the case, because the defendant or those under whom he claims, did not enter under, or in pursuance of, the pretended tax title. And besides, that act was repealed, without reservation by the revised statutes.—*R. S. 1846, p. 732.*

The tax title is bad, generally.

*c.* It appears that the whole farm contains two hundred and twenty acres; that it crosses the river Ecorse diagonally; that Blanchet occupied a small part fronting on the Ecorse in 1843; and that in 1845 he took a deed from Joseph Vermet of two acres wide and forty acres deep.

It must be assumed from the deed that the assessor intended to assess a tract one acre wide and twenty acres deep, but whether it was the twenty in question, or the other twenty bought by 'Blanchet, or the twenty which lies alongside of them, must be left to conjecture; and in making the assessment he purports to include one hundred and sixty acres in the same description; being at least one

hundred and twenty acres more than Blanchet ever pretended to own.

Such uncertainty is enough to defeat any paper which is relied on as the source or as part of a chain of title.—*Y. M. Society v. Detroit, 3 Mich. 172, 184.*

*d.* In order to constitute a good assessment and deed in the case, the presumption being that the description in the assessment is carried into the deed, the land ought to have been assessed by its name and boundaries, as required by the fourth subdivision of section 16.—*Sess. L. 1843, p. 66.*

In no other way, could a valid assessment be made of any part of this private claim, under the law then in force.

6. The offer to prove the custom among the "old French settlers, as to giving away their farms to their oldest sons," was incompetent. We are not informed whether it was the *coutume de Paris,* or the *coutume de Normandie,* or the *coutume de l' Ecorce,* which it was proposed to prove by the witness. Nor is it very clearly defined as to what "old French settlers" were referred to by the question; whether those of Acadia, or Montreal, or Mackinaw, or Detroit, or some other part of La Nouvelle France.

The ordinance of 1787, as to the descent and distribution of the property of intestates; and as to the disposition of property by wills, in writing; and as to the transfer of property by deed, under seal, must prevail. — See § *2 of the Ordinance.*

Or the acts on the same subject, to be found in the codes of 1820, or 1827, or 1833.

COOLEY CH. J.

The exceptions to the rulings of the Circuit Judge, upon which the plaintiff in error insists in this court, will be noticed in the order in which they appear in the record.

The action was ejectment, brought by Riopelle to recover two parcels of land, the one containing twenty acres and

seventy-four one hundreths of an acre, and the other one-half an acre, in private claim sixty-one, in the township of Ecorse, both of which parcels lie east of the north branch of the Ecorse river, and between the river and the northern line of the surveyed township number three south of range number eleven east. The plaintiff (below) had no paper title, but claimed the land by long continued possession derived from Ambroise Riopelle, to whom the claim was originally confirmed. No evidence was given in the case to show that the land was ever patented to any one, and it was conceded by counsel on the argument, that it never had been.

I. To show the confirmation of private claim sixty - one to Ambroise Riopelle, the plaintiff introduced a document from the General Land Office, as follows :

"Extracts from field notes of Aaron Greeley, surveyor of private claims 1809."

"No. 29 River Rouge, description No. 118, confirmed to Francis Trudell, commencing," &c. [Here follows description in full.]

"No. 30 River Rouge, description No. 61, confirmed to Ambroise Riopelle, commencing at a post standing on the south border of the River Rouge, between this tract and a tract confirmed to Francois Trudell, thence south twenty-nine degrees west two hundred and forty-nine chains and ten links to a hickory tree, standing in the line of St. Comb, thence north seventy degrees, thirty minutes west, eight chains, eighty-four links to a post, the southwest corner of a tract confirmed to Louis Visieve, thence north twenty-nine degrees east, two hundred and fifty-six chains sixty links, to a post standing on the south border of the River Rouge, thence along the border of said river down stream south thirty-one degrees east, ten chains eight links to the place of beginning, containing two hundred and twenty acres and seventy - four hundreths of an acre. Detroit, 6th December, 1809. Aaron Greeley, surveyor of private claims."

GILMAN *v.* RIOPELLE.

"No. 31 River Rouge, description No. 119 confirmed to Louis Visieve, commencing" &c. (Here follows description in full.)

GENERAL LAND OFFICE, April 11, 1866.

I, James M. Edmunds, Commissioner of the General Land Office, do hereby certify that the annexed plat and field notes are true and literal exemplifications of the plat and field notes of Claim No. 61 on file in this office.

| |
|---|
| Seal of U. S. |
| Gen'l |
| Land Office. |

In testimony whereof I have hereunto subscribed my name, and caused the seal of this office to be affixed, at the City of Washington, on the day and year above written.

J. M. EDMUNDS,
Commissioner of the General Land Office.

A copy of the plat of private claims on the River Rouge, showing claim sixty-one with claim 118 on one side and claim 119 on the other, was attached to this document, but no question arises upon that. The defendant objected to the admission of this copy of the field notes in evidence, because it did not purport to be a true copy of the whole of the original, and because it did not appear to have been, by the person or officer having charge of the original, compared with the original, and to be a true transcript therefrom, and of the whole of such original. The Circuit Judge overruled the objection.

So far as this objection was based upon a variance between the form of the commissioner's certificate and the form prescribed by our statute for the authentication of copies of public documents ( *Comp. L.* § *4308* ), the ruling of the Circuit Judge was clearly correct. The mode of authenticating the documents, records and proceedings of any of the departments or courts of the United States, is governed by the laws of the United States, and by the practice of such departments and courts, and not by the statutes of the State.— *Lacey v. Davis, 4 Mich. 140.* The form of this certificate is the usual one, and it is sufficient.

A more serious objection arises upon the fact that, while the copy purports to embrace the field notes of claims 118.

and 119, the certificate of the commissioner does not expressly refer to them, but the words employed refer in express terms only to the plat and the field notes of claim 61. It is therefore argued that, so far as the field notes of claims 118 and 119 are concerned, there was no authentication whatever; and this objection appears to me to be well based in fact, whether sufficient in law to exclude the evidence, or not.

It does not necessarily follow, however, that because something is incorporated in such a paper which the certificate does not cover, that the paper is to be excluded even as to the matters which are well certified. If those matters which are not certified are immaterial, and cannot affect the case one way or the other, there is no reason for wholly rejecting the evidence. And even if they might have a bearing in the case, the fact that they are not authenticated may be a sufficient reason why the portion of the document relating to them should not be read, but cannot be ground for rejecting another and entirely distinct and separate portion thereof, which is authenticated in due form.

In the present case, the field notes of claims 118 and 119 are not material or pertinent to the case, except as they may assist in defining the boundaries and identifying claim 61. But whether material or not, the objection of the defendant, which went to the whole document, and not simply to that part of it which related to claims 118 and 119 was clearly, I think, not well taken, and properly overruled. Had he objected to the reading of that portion which related to those claims, and been overruled, we might be required to examine the question whether that portion was material in the case or not; but the objection actually taken being too broad, and covering that part of the paper which was clearly admissible, the question of the materiality of the rest is not, I think, properly before us.

II. The second exception relates to the admission of evi-

dence offered by the plaintiff, to show the value of the premises in 1845. To understand the ruling on this subject, we must see how the case stood at the time it was offered. The plaintiff had given evidence, tending to show, that before, at and after the evacuation of this country by the English, under Jay's Treaty, in 1796, Ambroise Riopelle exercised acts of ownership over the land in question, built a house thereon, and claimed it as his own; that about 1837-8 or '9, Joseph Vermet went on to the place as a tenant of Dominique Riopelle; that in 1842, Alexander Riopelle went upon it as tenant of said Dominique, and that he, in that year, put Abraham Blanchet on the place, also as said Dominique's tenant, and that while said Blanchet was so in the occupancy thereof, on July 8, 1845, he took a quit claim deed of the lands from Vermet, purporting to convey a fee, at the expressed consideration of two dollars and fifty cents per acre. Through intermediate conveyances, the defendant claimed title under this deed, while the plaintiff claimed that, in 1851, after he had acquired Dominique's title, he let Augustus Vieux have the place as his tenant, and that defendant, as son-in-law of Vieux, occupied the premises under the lease to Vieux, in pursuance of an express agreement with the plaintiff.

This being the position of the case upon the evidence, the plaintiff was allowed, against the objection of the defendant, to show that the value of the premises in 1845 was $25 per acre. The object of this evidence was to raise a presumption, that when Blanchet took the deed from Vermet in 1845, at an expressed consideration so greatly below the real value of the land, it could not have been understood or supposed that he was acquiring the fee thereby, but rather that he was receiving the conveyance of a leasehold interest only.

I do not perceive much force in this evidence, both because the title, being founded only on possession, could hardly be expected to command such a price as it would if

perfect of record, and also because the consideration expressed in a deed is no very satisfactory evidence as to what the real consideration was which the party paid. The statement of the consideration, however, is open to explanation, and the circumstance that the title is not of record is one to which it is to be presumed the jury will give due weight All the surrounding circumstances which can have any bearing in showing whether Blanchet took possession as tenant or as owner of the fee, ought to be allowed to be put in evidence, and, as having some relevancy, I think it was competent to contrast the real value of the land with the price which Blanchet paid for the title, right or claim which he bought. Standing alone, this fact can have no force whatever in opposition to a deed apparently conveying the fee; but it might have some weight in a case where the other evidence left in doubt the character of the claim which Blanchet made to the land.

III. The plaintiff gave further evidence, tending to show that while Dominique Riopelle claimed the land and exercised acts of ownership over it, and prior to the time when Joseph Vermet went into possession, one Seabrook being then on the land, and Antoine Vermet acting as agent for the plaintiff, Joseph Vermet went to said Antoine and inquired of him, if he would let him, said Joseph, have the land; and that Antoine replied that if he could buy out Seabrook, and Dominique was willing, Joseph might have the land on the same terms on which Seabrook held it. The evidence of this conversation was objected to, but admitted, and we think rightfully.

The defendant regards this evidence as having been admitted to characterize the possession of Joseph Vermet, and as not admissible on that ground, because at that time Joseph was not in possession. This, however, was not strictly the ground on which it was received. The evidence was one step towards establishing a contract between Joseph Vermet and Dominique Riopelle, by which the former would

become the tenant of the latter; and if such a contract was oral, and was followed by the surrender of possession by Seabrook to Joseph. Vermet, it cannot well be claimed the evidence of the negotiations was hearsay evidence. It would be clearly competent to prove such a contract by either of the parties to it, but it would be equally competent to prove it by any other person who was present at the time and heard it.

IV. The plaintiff then proved, by Antoine Vermet, that while Dominique Riopelle exercised acts of ownership over the land, there was a house upon it, supposed to have been built by one Laribell, which witness threw down by order of said Dominique; and he then asked the witness, with a view to show the nature of the act of Dominique, as being in pursuance of his claim of title: "Why did Dominique wish the house thrown down? This question was objected to as immaterial and irrelevant, but the objection was over-ruled, and the witness replied, "because he wished no one trespassing on the farm. Laribell went on to settle, and I tore it down."

It was entirely competent, I think, to show that Dominique Riopelle caused the house to be thrown down, in pursuance of his claim of ownership, and in order to exclude any claim of possession on the part of Laribell; but this question was not properly framed to call out such evidence, nor was it obtained from the answer of the witness. He is not asked what Dominique said, but what his wishes were; and we do not know from his answer that he had any further means of knowing the purpose of Dominique, in directing the building to be torn down, or his wishes in regard to it, than such inference of motive as any third person might draw from his causing the destruction. It was not competent for the witness to testify to the motive of Dominique, unless, accompanying the direction, the motive was expressed; and this is not shown to have been the case.

V. The next exception relates to the refusal of the court to receive in evidence a tax deed from the Auditor General to Abraham Blanchet, dated November 30, 1846, and given in pursuance of a tax sale, made October 6, 1845, for delinquent taxes of 1843. I shall notice the objections to this deed as they are made in the brief of the plaintiff.

1. That Blanchet was in the occupancy and possession of the land from 1842 to 1852, covering the whole time of the accrual of the tax title, and that, therefore, the title is bad under the prior decisions of this court.—*Lacey v. Davis, 4 Mich. 150; Tweed v. Metcalf, Ibid, 586.*

This objection is not tenable, because, in the first place, it assumes that the possession of the land by Blanchet during the period in question was an undisputed fact, and there is nothing upon the record to show whether it was so or not. Where a party objects to the evidence on the ground that certain other evidence put in by himself makes it immaterial and incompetent, he must first show to the court that the fact supposed to be proved by such other evidence is not controverted in the case. Otherwise, he is not to assume that it is conclusively established until the jury have passed upon it, and any evidence which is competent on the theory that the jury may find against him, is to be received.

A more conclusive answer to the objection is, the fact that Blanchet's possession, when the taxes accrued, only goes to the validity of the tax deed as a conveyance of the title, and not at all to its admissibility as evidence. The statute under which the deed was given made it *prima facie* evidence of the correctness of all the previous proceedings, and it was, therefore, clearly admissible, however conclusive might have been the other facts which would show its invalidity.

2. The second objection to the deed is based upon a claim which appears to have been made by the defendant that the statute of limitations had run in his favor—he

having occupied the land ten years under a title derived from Blanchet, the tax purchaser.—*Laws of 1842, p. 133.*

The plaintiff is clearly correct, I think, in claiming that this statute of limitations does not apply in favor of a party who was in possession under some other claim—whatever may have been its nature—at the time of obtaining the tax title. The statute clearly intends that the party who is to have the benefit of the limitation shall enter, or shall have entered, into the actual possession of the lands, under his tax deed; and, if it were otherwise, a wide door would be opened to frauds on the part of persons who, being in possession of lands and bound to pay the taxes, shall attempt to cut off the rights of other persons by buying in the land for taxes which their duty to the public and to such third persons required them to pay. But this again is an objection which goes to the effect and sufficiency of the deed, and not at all to its admissibility.

3. It is insisted that the description in the tax deed is fatally defective. The description is "the following described land, situated in the County of Wayne, to wit: that part of private claim sixty-one, lying east of the north branch of the river Ecorse, in township 3, south of range 11 east, containing twenty acres and seventy-four one-hundredths of an acre, be the same more or less." The record shows that about one hundred and sixty acres of private claim sixty-one lies north of the north branch of the Ecorse, and that the north line of township three north of range eleven east would divide this nearly in the middle. There would therefore be in that part of private claim sixty-one, lying north of the north branch of the Ecorse, and in township three south of range eleven east, something like eighty acres of land. The plaintiff claims that it was clearly the intention in making the tax sale, to sell only twenty acres and seventy-four one hundredths, and that it is impossible to locate this in any particular part of the larger quantity; but inasmuch as definite and permanent boundaries are given, the deed must be

held to convey all the land within those boundaries, notwithstanding the quantity is much greater than that mentioned. This is on the familiar principle that the incorrect portion of the description is to be rejected where that which remains is sufficient, and that definite and permanent monuments are to control distance and quantity.

The plaintiff also claims that the description in the tax deed was not sufficient for the purposes of assessment, under the tax law of 1843, under which the assessment was made, because, not being "the subdivision of any section authorized by the United States for the sale of public lands," it was necessary, under subdivision two of section sixteen of the Act of 1843—*S. L. p. 66*—to "state the name or number of the lot or tract, or by what other lands it is bounded." In this case the number of the lot, a part of which was sold, is given, and definite and well-known boundaries which at each end separate the part sold from the remainder; and this, I think, complies with the statute. The requirement that it shall be described by the lands which bound it, has reference to those cases in which the tract is not known by name or number, and in which such a description would be most likely to attract the attention of the owner or other person interested in the payment of the taxes when it came to be spread upon the tax roll, or advertised for the purposes of a sale.

I think, therefore, that the objections to the admissibility of the tax deed were not well taken, and that the court erred in excluding it.

VI. The defendant having given evidence tending to show some claim of right to the land on the part of Toussaint Riopelle, the eldest son of Ambroise Riopelle, called Augustus Burdeno as a witness, and, having proved by him that he was acquainted with the custom among the old French settlers as to giving their farms to their eldest sons, asked him this question: "What was the custom among the old French settlers as to giving away their farms to their

eldest sons?" This question was objected to, and excluded by the court.

The purpose of this question evidently was to raise an inference that Ambroise Riopelle had given to Toussaint, his eldest son, his possessory right to the premises; but however common may have been such gifts among the class of people to whom Riopelle belonged, it is plain that the frequency of the practice could not warrant an inference of a similar gift in any other case where no direct evidence of it had been given. Whether such evidence would have been receivable in support and corroboration of direct evidence, that Ambroise Riopelle had put his eldest son in possession of the land, we need not inquire on this record.

For the rulings, admitting the witness Vermet to testify to the wishes of Dominique Riopelle in tearing down the Laribell house, and excluding the tax deed from evidence, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.