### WELLMAN v. BLACKMON.

1. APPEAL AND ERROR—EVIDENCE—ADMISSIBILITY.
   The consideration and determination of matters in controversy by consulting a sketch of the disputed boundaries made by the county surveyor and filed with the court after the testimony had been closed was unwarranted.

2. BOUNDARIES—DEEDS—DESCRIPTION—PROPERTY CONVEYED.
   On a bill to enjoin the interference with water rights, it appeared that in the deed to complainant the property was conveyed by a general description and also as containing "the water power and dam located on said property." The dam actually occupied a portion of another description owned by the grantors at the time of the conveyance to complainant. *Held*, that the specific grant of the dam controlled the general terms of the conveyance, and that complainant acquired title to such land as was actually occupied by the dam.

Appeal from Kalkaska; Chittenden, J. Submitted January 19, 1909. (Docket No. 119.) Decided March 4, 1909.

Bill by William A. Wellman to enjoin William C. Blackmon and Casper Olin from interfering with certain water

rights. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Gaffney & Miltner*, for complainant.

*Parm C. Gilbert*, for defendants.

On the 14th day of August, 1906, Francis A. Wellman and Silas A. Wellman, of the township of Boardman, county of Kalkaska, Mich., were owners of the N. E. ¼ of the N. W. ¼ of section 21, township 26 N., range 8 W., and also a piece of land lying immediately north of this description described as follows: Commencing at the S. W. corner of the S. E. ¼ of the S. W. ¼ of section 16, in township 26 N., range 8 W.; thence north along the eighth line of section 16, 30 rods; thence east $68\frac{10}{11}$ rods; thence south $17\frac{3}{5}$ rods; thence west $9\frac{1}{11}$ rods; thence south $12\frac{10}{33}$ rods to the south line of section 16; thence west along the same to the place of beginning. On the said 14th day of August, 1906, the said Francis A. Wellman, Mary E. Wellman, his wife, and Silas A. Wellman, made a conveyance to the complainant, William A. Wellman, as follows:

"All their right, title and interest in northeast ¼ of the northwest ¼ of section twenty-one (21), township twenty-six (26) north, of range eight (8) west, also the water power and dam located on said property, originally owned by Hamilton Stone and conveyed to the said first parties by warranty deed, from James R. Wylie and wife. Provided, however, of one exception of a certain contract made between said first parties and J. C. Gray, relative to an electric light plant, for one year in default of payment. First parties also reserve right of using pond to store logs and bolts and get same in mill for the sum of one dollar and a valuable consideration, lawful money of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged."

On the 4th day of September, 1906, Francis A. Well-

man, Mary E. Wellman, his wife, and Silas A. Wellman and May Wellman, his wife, made the following deed to Josiah C. Gray, Giles E. Hodges, and George S. Danser, trustees, who are the grantors of the defendants William C. Blackmon and Casper Olin:

" Witnesseth, that the said parties of the first part, for and in consideration of the sum of one dollar and other valuable consideration to them in hand paid by the said parties of the second part, the receipt whereof is hereby confessed and acknowledged, do by these presents grant, bargain, sell, remise, release and forever quitclaim unto the said parties of the second part, and to their heirs and assigns, forever, all that certain piece or parcel of land, situated in the township of Boardman in Kalkaska county and State of Michigan, known and described as follows: Commencing at the southwest corner of the southeast quarter of the southwest quarter of section 16 in township 26 north, of range 8 west; thence north along the eighth line of section 16, 30 rods; thence east 68 and $\frac{10}{11}$ths rods; thence south 17 and $\frac{2}{3}$nds rods; thence west nine and $\frac{1}{11}$ths rods; thence south twelve and $\frac{1}{3}$nds of a rod to the south line of section 16; thence west along the same to the place of beginning. Always excepting and reserving from the operation of this deed certain deeds heretofore made to Chas. Wellman, Nellie Burleson, the Lumberman's Tool Company, Ltd., and Anna T. Hall. The southeast quarter of the northwest quarter and the southwest quarter of the northeast quarter of section fourteen in town twenty-five north of range eight west. Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; to have and to hold the said premises to the said parties of the second part, and to their heirs and assigns to the sole and only proper use, benefit and behoof of the said parties of the second part, their heirs and assigns, forever."

The deed last above set forth was recorded on the 25th day of October, 1906; whereas the deed first above set forth was recorded on the 16th day of August, 1907. It is apparent from the record that the dam mentioned in the conveyance to the complainant, or some portion thereof, extends a few feet beyond the northerly line of

the N. E. ¼ of the N. W. ¼ of section 21, and, so far as it extends over said line, lies upon that portion of section 16 covered by the conveyance to the grantors of defendants. The complainant through the conveyance to him claims the right to control said dam and the flowage of water over the same for the purpose of creating power, and the defendants by reason of the fact that a small portion of the apron or slash board, and possibly a part of the flume, may lie north of the line between sections 16 and 21, and therefore on that part of section 16 conveyed to them, claim the right to use the water from the dam for the purpose of generating power to be used in running machinery on their land. They also threatened to make a connection with the dam for the purpose of taking water, or attempting to do so, and thereupon complainant filed his bill asking for an injunction to prevent said interference with his rights. The circuit judge upon the hearing of the case dissolved the temporary injunction and dismissed the complainant's bill. From this decree complainant appeals.

BROOKE, J. (*after stating the facts*). In reaching the determination which he did, the circuit judge was evidently of the opinion that because possibly some portion of the dam structure lay north of the line between sections 21 and 16, the defendants would have a right to the use of the flowage of water therefrom under their grant. He was influenced to this determination, according to his opinion, through the consideration of a sketch of the premises made by the county surveyor of Kalkaska county, and filed with him after the closing of proofs. It is not necessary, of course, to say that to receive this paper, so brought to his attention, and to permit it to in any wise influence his determination of the matters in dispute, was wholly unwarranted. In our view of the case, however, it is immaterial whether the dam in part lies upon that portion of section 16 covered by the conveyance

to defendants or not, inasmuch as when the conveyance of August 14, 1906, was made, the common grantors of the complainant and defendants owned both parcels, and by the descriptions contained in the earlier conveyance distinctly sold to the complainant the dam in question. The language of the deed as to this is:

"Also the water power and dam located on said property originally owned by Hamilton Stone and conveyed to the said first parties by warranty deed from James R. Wylie and wife."

It is quite clear that this specific grant of a definite object upon land at that time owned by the grantors must be held to control the general terms of the conveyance as to the land upon which it was supposed to be located. LONG, C. J., speaking for the court in *Woodbury* v. *Venia*, 114 Mich. 257, said:

"It is a well-settled law in this State that monuments control courses and distances, and that, when monuments and measurements vary, the monuments always control; but this reference is to monuments and measurements made by the original survey."

In *Gilman* v. *Riopelle*, 18 Mich. 164, COOLEY, C. J., speaking for the court, said:

"Where definite and permanent boundaries are given, the deed must be held to convey all the land within those boundaries, notwithstanding the quantity is much greater than that mentioned. This is on the familiar principle that the incorrect portion of the description is to be rejected where that which remains is sufficient, and that definite and permanent monuments are to control distance and quantity."

It is a significant fact that the complainant, through his attorney in fact, after the conveyances in question, continued to exercise sole control over the dam in question, made repairs upon the bridge of the highway thereon, and was not disturbed in his use thereof until the threatened action of the defendants, whereupon complainant filed his bill in this cause.

The decree of the court below is reversed, with costs of both courts, and a decree will be entered in this court permanently enjoining the defendants in accordance with the prayer of the bill of complaint.

GRANT, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.