GEORGE STEINBERG v. TOWN OF EDEN.

*Contract. Bounty. Reward. Enlistment. Towns.*

Under a vote to pay $300 to each volunteer that it is necessary to raise to fill a certain quota, if it turns out that but one man is necessary, the first man mustered in to the credit of the town under the call after the vote, will be entitled to recover the money, even though he is not the first to enlist.

If the soldier is mustered in while the deficiency is outstanding against the town, it is not material, whether the adjutant general actually reckons him on the deficiency, or not. The soldier is not responsible for the adjutant general's mode of keeping his books, and his books profess to show only the standing of the town with the government, and not of the soldier with the town.

An offer of a bounty to "each volunteer necessary to raise," is general, and direct from the town to the volunteer. Under it there need be no contract with the selectmen.

It will not prejudice the plaintiff's right that, at the time he was mustered in, the defendants' selectmen had taken steps to fill the quota by procuring men to sign contracts of enlistment, so long as they had not in fact filled the quota.

ASSUMPSIT. Plea, the general issue. Trial by the court, March term, 1868, PECK, J., presiding.

The plaintiff claimed to recover a bounty for enlisting and being mustered into the United States volunteer service to the credit of Eden, and serving under that enlistment in the late rebellion.

The plaintiff introduced a copy of record of a town meeting of the town of Eden, held December 8, 1863, at which the town voted "To pay three hundred dollars to each volunteer that it is necessary to raise, to fill the quota of 300000 men of the last call of the president of the United States, for this town." It appeared that October 17, 1863, the president made a call for 300000 men, and that the quota of the town of Eden under that call was fifteen men, exclusive of any credits for surplus men under previous calls. The plaintiff introduced a certified copy of record from the office of the adjutant general of this state, showing, as the plaintiff's counsel claimed, the credits of the town of Eden from November 9, 1863, to March 1, 1864, and that the plaintiff was enlisted December 16, 1863, and was the first soldier mustered in and credited to the town of Eden after December 8, 1863 ; also a copy of record from the adjutant general's office, showing, as the plaintiff's counsel claimed, that the quota of Eden under the call for 300000 men of October 17, 1863, was fifteen men.

The plaintiff also introduced general order No. 2, dated November 2, 1863, as entered in the adjutant general's printed report, on page 115, and the tabular statement on the three next following pages, from which it appeared that the aggregate number of men Eden was called on to furnish under that call, after deducting all credits, was eight. At this time the town had a credit of thirteen surplus, and their quota under the call for 300000 was fifteen men, and there were six men due from the town for deficiency under the draft referred to in said order of the adjutant general; making twenty-one men with whom the town was charged, and, after deducting the credit of thirteen, leaving eight men whom the town were called on to furnish under the call at that time. The call on the town for the eight men was made about November 2, 1863. If the credit is first applied to extinguish the deficiency under the draft, the eight men were all under the call for 300000 of October 17, 1863; but if the whole credit is applied to reduce the quota of fifteen, it leaves six men due under the draft, and two men under the call for 300000 of October 17, 1863. But by an order of November 6, 1863, which was put in evidence by the defendants, the draft was suspended or superseded, or else, as the defendants' counsel claimed, it was annulled. The order, or circular, is on page 124 of the printed volume of the adjutant general's report for 1863–1864, entitled " Circular No. 2." It appeared that that draft never took place, but men were supplied by subsequent calls. But Asa Smith, a witness on the part of the defense, testified, among other things, in effect, and the court so found, that he was one of the selectmen of Eden in 1863 and 1864, and attended to the enlisting of men to fill the quota of that town, and that he understood and considered that by that call the town had to furnish eight men, and that he so understood it at the time of the meeting, December 8, 1863 ; and it appeared that the selectmen of that town, in answering that call, acted upon that understanding.

It appeared that the plaintiff, prior to and at the time of his enlistment hereinafter stated, was a soldier in the military volunteer service of the United States, in the army of the Potomac, and

was at Brandy Station, under a term of enlistment that was about to expire ; that he was in company D of the 5th Vermont regiment ; that a few days before December 15, 1863, he saw a letter which was written by some one in Eden to Wm. Demeritt, a brother-in-law of the plaintiff, and a fellow-soldier with the plaintiff from Eden in the same company, to the effect that the town of Eden would pay a bounty of $300 each to soldiers who would enlist to the credit of that town under the then call ; that, relying on that, and being assured by his superior officers that it was so, the plaintiff re-enlisted to the credit of Eden on the 15th of December, 1863, at Brandy Station in Virginia, in the same company and regiment ; and that he did so on the faith of said vote of December 8, 1863, with the design and expectation of receiving such bounty therefor, and December 16, 1863, he was mustered in to the credit of said town, relying on receiving said bounty therefor, under the vote of December 8, 1863. The plaintiff was the first man that was mustered in to the credit of Eden after said vote of the town of December 8, 1863. There were four other soldiers, then serving in the same regiment with the plaintiff, who re-enlisted to the credit of Eden on the same day the plaintiff did, and were mustered in the same day he was mustered in, but the plaintiff was the first of the five that enlisted, and was the first that was mustered in.

On the 17th of December, 1863, the selectmen warned another meeting of the town of Eden, to be held December 30, 1863, on the subject of filling their quota, at which meeting, on said 30th of December, the town voted to raise on the grand list $300 each for the first six men who should enlist into the service of the United States to save the draft.

It appeared that the selectmen, under the call for eight men, enlisted that number in December, 1863, and January, 1864 (aside from the five who enlisted in the field, as above stated), all of whom, so enlisted by the selectmen, were enlisted after December 8, 1863, except one, Haskell Foster, who enlisted and was mustered in as early as November 14, 1863. Dan Jones, one of these men that the selectmen enlisted, was enlisted December 9, 1863, and Milton H. Brown they enlisted January 11, 1864.

Brown and also Joseph Bailey (another of those they enlisted)·
were mustered in January 26, 1864.

It appeared, on cross-examination of said Smith, a witness for·
the defendants, and one of the selectmen of Eden, that the selectmen·
were notified by the adjutant general about January 20, 1864, by
letter, that the plaintiff and the other four who enlisted in the field,
as above stated, naming them, had enlisted and been mustered in:
to the credit of Eden, and that they were credited to said town·
under said call for 300000 men.

It appeared from the testimony of Henry D. Bradley, a witness
on the part of the defense, that the account with Eden under the
call of October 17, 1863, was figured up and settled on the adju-
tant general's book, which was in evidence, not at the time it bears
date, but February, 1864, and reckoned in computation of quota
February 27, 1864, same as published March 1, 1864, and surplus
credit on that settlement carried forward, and included a call
made February 1, 1864; and that the call of February 1, 1864,
was for covering up the draft of 1863. A written notice or letter
from the adjutant general to the selectmen of Eden, dated Jan-·
uary 5, 1864, was in evidence, also.

Bradley, in testifying on the part of the defense, under objec-
tion by the plaintiff, from the account as ultimately made up on
the adjutant general's book, testified that either Joseph Bailey or
Milton H. Brown would apply for the other of the two men due
from Eden after deducting the six men due under the draft (mean-·
ing the other besides Haskell Foster); that he could not tell
which, as Brown and Bailey were both mustered in at the same
time, and both mustered in January 26, 1864 ; and testified that
the plaintiff would apply on the call of July 18, 1864. This tes-
timony of Bradley as to where the men applied, was seasonably·
objected to by the plaintiff, as incompetent; and the court admitted
it subject to the objection, to which the plaintiff excepted. There
was no evidence contradicting this, except the paper testimony
referred to in the exceptions, and what may be inferred.

It appeared that July 18, 1864, the president made a call for
500000 men, and the quota of Eden under that call was seventeen
men, against which the town had a credit of fourteen surplus men,.

which being deducted, left three men Eden was required to fur-- nish to fill that call. It appeared that, if the plaintiff is not counted as one of the men Eden furnished under the call of October 17, 1863, for 300000 men, he, with the four that enlisted and were mustered in in the field, as above stated, went into said credit of fourteen, and thus went to reduce the number to be fur-- nished by Eden under the call of July 18, 1864, down to three, as stated. This the selectmen were aware of at the time, and knew that these five men were being counted to reduce the quota of the town under that call, as above stated. It appeared that, in order to raise the three men to answer the call of July, 1864, for 500000 men, the town of Eden voted to pay bounty to each volunteer for one year, $300, and to each for three years, $500; and, being unable to raise them for that sum, procured them at a higher price than that.

The court decided the plaintiff entitled to recover the $300 bounty and interest, and rendered judgment accordingly for the plaintiff, to which the defendants excepted.

*Brigham & Waterman* and *Geo. W. Hendee*, for the defendants.

*R. C. Benton*, for the plaintiff.

The opinion of the court was delivered by

STEELE, J. The question is whether the plaintiff comes within the terms of the offer made by the town in their vote of December 8, 1863. The vote was " To pay three hundred dollars to each volunteer that it is necessary to raise, to fill the quota of 300000 men of the last call of the president of the United States, for this town." No question is made but the plaintiff was a volunteer, and a volunteer under the call for 300000 men, and under that call " for this town." So far he comes strictly within the terms of the vote. But the defendants claim that he was not of the number of volunteers whom it was " necessary to raise to fill the quota," and that in this respect he fails to bring himself within the benefit of the offer. He was the first man mustered in to the defendants' credit after the vote. The officers of the town were notified of the plaintiff's muster in to their credit six days before they mustered in the

men enlisted by themselves. They then mustered in Milton H. Brown and Joseph Bailey, and the defendants claim that these men or one of them should take the precedence of the plaintiff. These parties were mustered in January 26. The plaintiff was mustered in on the 16th day of the previous month, and the town were notified of it on the 20th day of the same month. Under this state of facts, we think it very clear that the plaintiff takes the precedence of Brown and Bailey. He enlisted, procured himself to be mustered in, and the town to be notified of it, six days before the muster in of either Brown or Bailey. When he was mustered in, the town confessedly stood charged with a deficiency of at least one man upon the records of the adjutant general. For the purposes of this case, it is not necessary to decide whether the town needed to raise more than one man to fill their quota. So long as it is admitted that it was necessary to raise one man, and the plaintiff was mustered in while that necessity existed and appeared upon the books of the adjutant general, and the town were notified of it before they mustered in any one else, it is unnecessary for him to show that the town still needed more men. It is confessed they wanted one man, and the plaintiff supplied that want. It is entirely immaterial, whether the adjutant general counted him on that deficiency, or applied him upon a subsequent call. The plaintiff is not responsible for the adjutant general's mode of keeping his books. It made no manner of difference with the standing of the town, which one of the soldiers' names was counted on the excess. The object of these books was to show the standing of the town with the government. They did not profess to show the standing of the soldier with the town. The moment that the town were notified that the plaintiff had been mustered in to supply their acknowledged lack of one man under the call, the right of the plaintiff to demand and recover the promised three hundred dollars, was vested and perfect. No subsequent action of the federal, state or town authorities could prejudice that right. It is true the plaintiff made no trade with the selectmen. None was necessary. The offer was not limited to volunteers who should contract with the selectmen. If the town had desired to affix such a limitation to their promise, they would have expressed it in their

vote. As the offer stood upon the record, it was general, and it was direct from the town to "each volunteer necessary to fill their quota." The plaintiff required no conference with the selectmen to bring himself within all its terms. Nor does it alter the case, that the selectmen had, before January 20, when they learned of the plaintiff's muster in to their credit, taken steps to fill their quota, so long as they had not filled it. Until the quota was filled the offer was open. The selectmen had enlisted men to fill it, but the men had not been mustered in, and there was no certainty that the government would accept them, and until their acceptance the quota would be outstanding against the town, precisely as if these men had not enlisted. The preliminary enlistment, until the man is accepted by the government, is imperfect, and is available neither to diminish the quota of the town nor to make the town liable to pay a bounty. When the selectmen learned on the 20th of January that their quota was filled, they might, if they had chosen, have disposed of their chance to the credit of Brown and Bailey, which was in their control, to some other town whose quota was not full. The market for such property was in those days quick, and usually of an upward tendency. If, however, they did not choose to take any course to relieve themselves of these men, but, on the contrary, preferred to hold them and to perfect their enlistment by a muster in to the credit of the town, they certainly ought not to expect to hold them at the plaintiff's expense. The selectmen took the course most prudent for the town. The excess furnished under this call went to reduce the quota under subsequent calls when bounties were much higher. Motives of patriotism as well as prudence, induced the different towns in the state to raise under this call an excess above their quotas, amounting in all to over 2000 men. Of this excess the town of Eden furnished 14. They probably did not accomplish so creditable a result entirely by accident. On the 23d day of January, three days after the selectmen had notice of the plaintiff's muster in to their credit and before the other soldiers had been mustered in, the authorities of the state issued a circular to the selectmen of the different towns, appealing to them to raise men in excess of their quotas, in the following language: "It is

13

not to be expected that the large government bounties now offered, will be continued after the first of March. Sound policy would dictate to the towns to take advantage of their present offer and raise men in anticipation of a future call. The cessation of labor in any town merely for the reason that the present quota of the town ·has been filled, is but a selfish consideration. Let all the men be raised that can be obtained. The credit will stand against future calls, and the government, which it is our pride to uphold, will have the present benefit of the men where and when they are most needed." Adj. Gen.'s Report, 1864, p. 10–14. If this appeal somewhat affected the conduct of the defendants' selectmen, it is not at all to their discredit. But so long as the plaintiff comes strictly and precisely within the terms of the offer contained in the vote of the town, and he actually was counted by the state authorities upon either that quota, or a subsequent quota when the town paid much higher bounties, it is difficult to perceive the ground in either law or conscience, upon which the town may now question his right to the bounty of three hundred dollars. Whether or not it was incumbent upon the plaintiff, to establish all that appears in this case, in order to become entitled to a recovery, it is of course unnecessary to decide.

The judgment of the county court is affirmed.