## JAMES A. HAWTHORNE v. CITY OF HOBOKEN.

1. On the 19th of December, 1864, the President of the United States called for a draft of three hundred thousand men for military service. To avoid a draft in the city of Hoboken, the mayor and common council resolved that " a city scrip for the amount of $350, in addition to the county bounty of $400, be issued to every drafted man or volunteer from the city entering into the service under such call, provided such drafted man or volunteer shall enter into the military service of the

Hawthorne v. City of Hoboken.

United States, or furnish an acceptable substitute for one or more years, and shall be duly accredited to the quota of said city under said call." The plaintiff having enlisted and been accredited to the said quota, while the resolution was in force, and having brought suit against the city for non-payment, *Held*—

That the resolution, by such enlistment, became a contract between the city and the plaintiff for the delivery of the scrip specified in the resolution, for the non-performance of which an action would lie.

2. A transcript from the War Department, authenticated in a manner to authorize its admission in evidence, is plenary proof of the subject matter contained in it. The certificate of the officer, who is the custodian of the original paper, document, or record, and the seal of the department, make the transcript evidence.

3. Oral proof and the certificate of the provost marshal, issued to the volunteer on his enlistment, are competent to establish the fact that the plaintiff was enlisted and mustered into the service, and accepted by the mustering officer, and credited upon the quota of the city.

4. Actual residence in the city was not material. Any volunteer duly accepted and actually credited upon the quota of the city, was a volunteer "from the city," within the meaning of the resolution.

5. Any fraud or illegal practice on the part of bounty brokers or third persons, in regard to the enlistment, to which the plaintiff was no party, and not affecting, injuriously, the interests of the government, cannot prejudice the plaintiff in the enforcement of his legal rights against the city authorities upon their contract.

On rule to show cause why the verdict should not be set aside, &c.

This suit is prosecuted in the name of the plaintiff, at the instance of one John M. Board, to recover damages for the refusal of the defendant to issue to the plaintiff city scrip for the sum of $350, which is claimed to be due to the plaintiff as bounty for his enlistment as a volunteer in the service of the United States, to the credit of the city, under the proclamation of the President of the United States, calling for three hundred thousand volunteers, made on the 19th of December, 1864.

As an inducement to persons to volunteer in such military service, and thus relieve the citizens liable to military service from a draft, the mayor and common council of the city, on the 18th of March, 1865, adopted and published the following resolution :

"*Resolved,* That a city scrip for the amount of $350, in addition to the county bounty of $400, be issued to every drafted man or volunteer from this city, entering the service under the late call of the President of the United States for three hundred thousand men; *provided,* such drafted man or volunteer shall enter the military service of the United States, or furnish an acceptable substitute for one or more years, and shall be duly credited to the quota of this city under the present call."

On the 13th of April, 1865, the plaintiff was enlisted in the military service at Newark, and the following certificate was issued :

"This is to certify that James A. Hawthorne was enlisted into the military service of the United States from the second ward of the city of Hoboken, Hudson county, New Jersey, as a volunteer, one year, and credited on the call for three hundred thousand men.

"H. J. MILLS,

"*Captain and Provost Marshal.*

" A true copy from the files. Correct: G. L."

The plaintiff, with other volunteers, who were credited on the quota of the city, was put in through the instrumentality of one Peter Mead, a bounty broker, who testifies that the bargain with the men was, that they should have from $650 to $700 each. When the plaintiff was mustered in, $400 were paid for him into the hands of the provost marshal. The money was paid by Mead, who took from the plaintiff a receipt, of which the following is a copy :

" Received, Newark, April 13th, 1865, from Peter Mead, the Hudson county and Hoboken city scrip, in full.

"JAMES A. HAWTHORNE.

" Witness : Aaron G. Mead."

The money to pay the recruit was furnished by Board, to whom Mead delivered the receipt, with an endorsement thereon as follows : " Pay the bearer. Peter Mead."

The scrip for $400, offered by the county has been received by Board.

The enlistment and credit to the city were proved by the testimony of the provost marshal and his assistant, and by other oral proof, and by the certificate issued by the provost marshal to the volunteer, on his enlistment. In addition thereto, a paper with a schedule, containing a list of the names of volunteers, when enlisted, where enlisted and mustered, and where credited, was produced by the plaintiff. On this paper appears the name of the plaintiff, with the place and date of his enlistment, the name of the officer by whom he was mustered into service, and a credit to the city of Hoboken. Appended to this document were the following certificates:

"WAR DEPARTMENT,
"ADJUTANT GENERAL'S OFFICE,
"WASHINGTON, May 26th, 1870.

"It appears from the records of this office, of which I am legal custodian, that the information contained in this annexed list is truly copied from the muster and descriptive roll of volunteers, kept by the provost marshal of the fifth congressional district of New Jersey.

"E. D. TOWNSEND,
"*Adjutant General.*

"Be it known, that Edward D. Townsend, who has signed the foregoing certificate, is the adjutant general of the army of the United States, and that to his attestation, as such, full faith and credit are and ought to be given.

"In testimony whereof, I, William W. Belknap, Secretary of War, have herewith set my hand, and caused the seal of the Department of War of the United States of America to be affixed, on this 26th day of May, 1870.

"WILLIAM W. BELKNAP.
[L. S.]                "*Secretary of War.*"

This paper was received in evidence under objection from the defendant's counsel.

Hawthorne v. City of Hoboken.

An order to stop further recruiting was issued by the secretary of war on the 14th of April, 1865.

The resoultion of the common council of the city of Hoboken, of March 18th, 1865, was rescinded by a resolution which was approved April 14th, 1865.

The city authorities having refused to issue the scrip to the plaintiff, in pursuance of the resolution of March 18th, this action was brought, and resulted in a formal verdict for the plaintiff.

A rule to show cause why the verdict should not be set aside was allowed, which was argued at the Term of June, 1871, before the CHIEF JUSTICE, and Justices BEDLE and DEPUE.

For the plaintiff, *C. Parker* and *J. Dixon*.

For the defendant, *Leon Abbett*.

The opinion of the court was delivered by

DEPUE, J. The resolution of March 18th, 1865, which was not rescinded when the plaintiff's enlistment was made, became, by such enlistment, a contract between the city and the plaintiff for the delivery of the scrip specified in the resolution, for the non-performance of which an action will lie. *Grover* v. *Pembroke*, 11 *Allen* 88 ; *James* v. *Inhabitants of Scituate, Ib.* 93 ; *Steinbergh* v. *Eden*, 41 *Vt.* 187.

Several reasons were relied on for setting aside the verdict:

*First.* That there was no legal evidence of the enlistment and mustering of the plaintiff into the military service of the United States, as a credit upon the quota required of the city. If the transcript, certified from the war department, is authenticated in a manner to authorize its admission in evidence, the proof on these subjects, by that document alone, is plenary.

The mode of authenticating documents of the departments of the United States is governed by the laws of the United States and the practice of such departments, and not by the

statutes of the states. *Gilman* v. *Riopelle*, 18 *Mich.* 145. By the act of congress of 15th of September, 1789, all copies of records and papers in the office of the secretary of state, authenticated under the seal of his office, are made competent evidence, equally with the original record or paper. *Brightley's Dig.* 846, § 7. By a subsequent act passed 22d of February, 1849, all books, papers, documents, and records in the war, navy, treasury, and post office departments, and the attorney-general's office, may be copied and certified under seal, in the same manner as those in the state department, and with the same force and effect. *Brightley's Dig.* 267, § 17.

It is the certificate of the officer who is the custodian of the original paper, document, or record, and the seal of the department, which make the transcript evidence. *Smith* v. *The United States*, 5 *Pet.* 292, 300. The certificates, in this case, are in compliance with the usual mode of authenticating documents under the act of congress, (*Catlett* v. *Pacific Ins. Co.*, 1 *Paine C. C.* 594, 612; 1 *Wend.* 561, 578; 4 *Wend.* 75; *Smith* v. *The United States*, 5 *Pet.* 292, 297,) and the transcript was properly received in evidence.

But, independently of this transcript, the oral proof in the cause and the certificate of provost marshal issued to the volunteer on his enlistment, fully establish the facts that the plaintiff was enlisted and mustered into the service, and accepted by the mustering officer as a volunteer, and is credited upon the quota of the city. Testimony of this character is competent, and may be received in substitution of transcripts from the muster rolls of the war department, or even to contradict the entries of enlistments in the books of that department. *Chapman Township* v. *Herrold*, 58 *Penn. St. R.* 106; *Town of Lebanon* v. *Heath*, 47 *N. Hamp.* 353; *Steinbergh* v. *Eden*, 41 *Vt.* 187.

*Second.* That the plaintiff was not, at the time of his enlistment, a resident within the city of Hoboken, and, therefore, was not such a volunteer as was within the meaning and intent of the resolution. There was no proof in the cause that the plaintiff resided in the city of Hoboken, and the court over-

ruled the offer by the defence of proof that the plaintiff did not belong by actual residence, to the ward or city to which he was credited. If the residence of the plaintiff within the city at the time of his enlistment was material, the objection is fatal.

The resolution does not specially restrict the offer of a bounty to volunteers who are resident within the city. The object of offering bounties was to obtain volunteers to relieve the citizens, as far as was practicable, from the burdens of a draft. Any volunteer who was accepted by the provost marshal as a part of the quota due from the city, and was actually credited upon such quota, was a volunteer " from the city," within the meaning of the resolution.

By the conscription act then in force, a volunteer liable to draft, and enrolled, was required to be credited to the place of his actual residence; but if not liable to draft or enrollment, he might volunteer to the credit of any district he might choose to become a substitute for another liable to the draft, at the latter's place of residence. 11 *Opinions of Att'ys Gen.* 187. Upon the enlistment of a volunteer, it was the duty of the mustering officer to ascertain his place of residence and liability to draft elsewhere, with a view to determine the legality of his credit to the sub-district, to the credit of which he proposed to volunteer. For this purpose the officer was empowered to require the affivadit of the volunteer or evidence *aliunde.* 1 *Op. Att'ys Gen.* 168. When the volunteer was mustered in he became a soldier, and subject to military authority and discipline, (*Tyler* v. *Pomeroy,* 8 *Allen* 480, 501,) and the credit was then given.

When, under a resolution like that now in question, the volunteer is accepted and mustered into the service, and credited in compliance with the terms of the resolution, the right of the volunteer to the proffered bounty is complete. Thenceforth his duties and obligations are to the government in whose service he is, and not to the municipality or individual to whose credit he has been enlisted. In an action to recover such bounty, it is no defence that the volunteer or substitute

deceived the officer of the government with respect to his qualifications, if, in fact, he was accepted, and the principal received the benefit of his enlistment in a corresponding exemption from a draft. *Servis* v. *Cooper*, 4 *Vroom* 68. He will, on such enlistment, be entitled to recover the bounty offered, notwithstanding the omission of the adjutant general to credit the volunteer in his books, in accordance with the credit which was given when he enlisted; (*Steinburgh* v. *Eden*, 41 *Vt.* 187;) or his promotion to the rank of an officer; or his discharge by the government before the expiration of the term of his enlistment. *Winchester* v. *Corinna*, 55 *Maine* 9. As between the volunteer and the city, his residence and qualifications to enter the service as a credit on the quota of the city are immaterial, if, in fact, the military authorities were satisfied to accept him as a volunteer upon such credit, and the city received the benefit of his enlistment by a credit on its quota.

*Third.* It was insisted that the plaintiff did not volunteer upon the faith of the resolution, but for the money paid him on his enlistment, and that the action should have been brought in the name of Board for money paid, wherein the recovery would be only for the amount actually advanced.

The proof is, that Chamberlain, a member of the city council, and a member of the volunteer bounty committee, informed Mead and other bounty brokers that the city was paying $350 in scrip for volunteers, and requested them to put in men to the credit of the city; that he was present at the office of the provost marshal at the time of these enlistments, acting officially as the representative of the city, and saw the men credited to the city, and paid by the brokers. The receipts which were signed by the volunteers, and delivered to Mead, show what the understanding on this subject was between them and Mead. That it was understood by Chamberlain, the agent of the city, that the volunteers who were credited to the city would be entitled to scrip under the resolution of March 18th, is manifest from his testimony. That he disregarded his instructions, cannot affect the rights

of these parties. The evidence was sufficient to justify a finding that the plaintiff's enlistment was made on the belief that he would be benefited by the scrip; and that he was induced to volunteer to the credit of the city by the bounty offered by the resolution.

Between Board and the city there was no privity of contract which would raise an *assumpsit* in his favor. The only action which could be maintained is for the refusal to issue the scrip, which must be brought in the plaintiff's name. Unless Board is the equitable assignee of the plaintiff's entire interest in the scrip, by an absolute purchase, the sum recovered will be for the benefit of the plaintiff, subject to such equitable claim as Board may have for advances he made on the security of the receipt.

It was further argued that the transactions of Board with respect to these enlistments was illegal, and that, therefore, no recovery can be had in this case. When a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. *Armstrong* v. *Toler*, 11 *Wheat.* 261. But the proof of the party's complicity in the illegal act must be clear before the court will visit upon him a forfeiture of his rights, or exclude him from the aid of the courts in the enforcement of what otherwise would be a legal demand.

It is said that Board, on procuring these enlistments, paid to Captain Laroze, the marshal's clerk, $150. It is insisted that the payment was made in furtherance of an illegal and corrupt arrangement between Board and Laroze.

It does not clearly appear that that sum was paid to Laroze on the enlistment of the plaintiff. It is admitted that such sum was paid to him on the enlistment of McKenzie, whose suit was tried at the same time, and is now before the court.

Assuming that the same sum of money was deposited with Laroze on each enlistment, it is not shown for what purpose the money was received. It does not appear but what the moneys received by him were paid over to the volunteers, or held at their instance for their benefit.

The proof is insufficient to establish any corrupt practice on the part of Board with Laroze. The transaction is susceptible of an explanation consistent with the innocence of Laroze. At the utmost, the inference would only be that he was dealing in certificates of credit, which was a violation of the rules of the war department. With respect to Board, a guilty complicity in an unlawful and corrupt arrangement rests on very slight grounds of suspicion.

But, if the proof on this subject were full, it is difficult to perceive how any corrupt and illegal practices between Board and Laroze could affect the plaintiff in this suit, or avail the city as a defence to an action in his name. The plaintiff was no party to an illegal transaction. The city is called upon to pay only what they voluntarily agreed to pay. Neither the city nor the United States were injured by the violation, by Laroze, of the rules of the war department. If any fraud was committed the plaintiff was the party defrauded. As between him and Board he will be entitled to redress for any injury he may have suffered from the deceit, but any legal right which is enforceable at his suit against the city on their contract, cannot be prejudiced thereby.

Rule to show cause discharged.

CITED *in Morrow* v. *Vernon, post p.* 496; *Mayor of Hoboken* v. *Bailey,* 7 *Vr.* 493; *S. C.,* 8 *Vr.* 523.