McLean, Justice,
 

 delivered the opinion of the court. — A writ of error is prosecuted in this case, to reverse the judgment of the district court of Missouri, whict exercises the powers of a circuit court. In December 1824, the United States brought an action of debt against the plaintiff in error, to recover $10,000. The claim arises on a bond signed by the plaintiff, as one of the sureties of Alpha Kingsley, who is alleged to have been appointed a paymaster in the army. The bond was executed on the 7th day of February 1810, in which the plaintiff, and one Wilson P. Hunt, bind themselves, jointly and severally, to pay to the United States the above sum. The condition of the obligation states, “ that the said Alpha Kingsley is about to be appointed a district paymaster,” &c.,
 
 “
 
 who will, from time to time, be charged with funds, to execute and perform the duties attached to that station, for which he will be held accountable,” <fcc., and if he shall£t well and truly execute the duties of district paymaster, and regularly account for all * «-, moneys placed in his hands, to "'carry into effect the object of his -* appointment,” <fcc., ££ then the obligation to be void.”
 

 Several pleas were filed, and relied on in the defence. In the first plea, it is asserted, that from the time of executing the writing obligatory the said Kingsley did well and truly observe and fulfil the conditions of said bond, according to their tenor and effect. The second plea contains similar allegations, except as to accounting for all moneys in the hands of said Kingsley ; and by way of excuse, the plea states, that he was removed from office, on the first day of April 1815, for various causes assigned ; and that on the 15th of September following, he reported himself to the treasurer of the United States as ready for settlement, but his accounts were not adjusted by the government ; that at this time, and long afterwards, Kingsley was solvent, and able to pay the full amount of his defalcation ; that no notice was given to him by the treasury department to account for moneys in his hands ; nor was any notice given to the defendant below, until about the commencement of the suit. And it is alleged, that before the commencement of the suit, Kingsley became insolvent. In the third plea, it is averred, that Kingsley, neither at the time the bond was executed, nor at any subsequent period, was appointed district paymaster. The fourth plea denies that any money came into his hands, as district paymaster.
 

 To the second plea, a demurrer was filed, and issues were joined on the third and fourth. In their replication to the fourth and first pleas, the plaintiffs allege, that a large sum of money came into the hands of Kingsley as district paymaster, and that on a final adjustment of his accounts, in April 1823, there remained in his hands a balance unaccounted for, of $48,492.53. The rejoinders stated, that Kingsley did regularly account for and pay to the plaintiffs all sums of money which came into his hands, as district paymaster.
 

 The jury found the issues of fact for the plaintiffs, and that the defend-*2971 ant’ aS Paymaster) was indebted to the plaintiffs in the *sum of -* $31,197.14. On this verdict, a judgment for $10,000, and costs of suit, was entered.
 

 At the trial, exceptions were taken to the evidence offered, which being
 
 *191
 
 overruled, the following hill was tendered and signed. ‘ The plaintiffs to maintain the issue on their part, read to the jury, a dulj certified copy of the bond sued on, and offered to read, as evidence, a paper purporting to be a transcript from the books and proceedings of the treasury department, containing an account, headed, Alpha Kingsley, late district paymaster, in account with the United States. In which account, he was charged, as late district paymaster, with moneys advanced to him, for pay, subsistence, forage, bounties and premiums, and contingent expenses of the army ; and credited with disbursements made, under the same heads of expenditures, and showing a large amount of items suspended and disallowed. By this account, it appeared, that the same had been settled by the third auditor of the treasury, and it showed a balance due to the United States of $48,492.53. The account was duly certified to the second comptroller of the treasury ; who admitted and certified the above balance, on the 23d day of April 1823.”
 

 There were also the following certificates annexed — “ Treasury department, third auditor’s office, 1st September 1824. Pursuant to an act, to provide for the prompt settlement of public accounts, approved 3d March 1817, I, Peter Hagner, third auditor of the treasury of the United States, do hereby certify, that the foregoing transcripts are true copies of the originals on file in this office. (Signed) Peter Hagner, auditor.”
 

 “
 
 Be it remembered, that Peter Hagner, Esq., who certified the foregoing transcripts, is now, and was, at the time of doing so, third auditor of the treasury of the United States, and that faith and credit are due to his official attestations. In testimony whereof, I, William H. Crawford, secretary of the treasury, have hereunto subscribed my name, and caused to be affixed the seal of this department, at the city of Washington, this 1st September 1.824. (Signed) Edward Jones, chief clerk, *for William ^ H. Crawford, secretary of the treasury.” To this certificate, the seal *- of the treasury department was affixed.
 

 There being no other evidence given to the jury than this transcript, the court instructed them, “ that as by the account, it appears, there are in it items of debit' and credit to Kingsley, as district paymaster, it furnished evidence of his having acted as district paymaster, and of his appointment as such. On the facts stated, a reversal of the judgment entered in the district court is insisted on. 1. Because the United States neglected to enforce their claim against Kingsley, and 2. Because the court erred in admitting the transcript as evidence, and by instructing the jury, that it conduced to prove that the defendant was a district paymaster.
 

 That the government has been negligent in settling the account of Kingsley, and collecting the balance of moneys in his hands, it is contended, is shown by the facts stated in the second plea, to which the plaintiffs demurred. From the removal of Kingsley from office, to the final adjustment of his accounts in the treasury department, there was a lapse of about eight years; during which period, it seems, he became insolvent. That he was able to pay the amount of his defalcation, when he was dismissed, is admitted by the pleadings ; and also, that no steps were taken by the government to recover the claim from him, or his sureties, until a short time before the commencement of the present action.
 

 Sound policy requires, that the accounts of disbursing officers sho lid be
 
 *192
 
 ■adjusted atf the proper department, with as much despatch as is practicable. This is alike dtie to the public, and to persons who are held responsible as sureties. To the individual who has received advances of money, no lapse of time nor change of circumstances can weaken the claim of the government for reimbursement. But there may be some cases of hardship, where, after a great lapse of time, and the insolvency of the principal, the amount of the defalcation is sought to be recovered from the sureties. The law on this subject is founded upon considex-ations of public policy. While Various acts of limitation apply to the concex-ns of individuals, none of them operate against the government. On this point, there is no difference of opinion among the fedex-al or state coux-ts.
 

 *The fiscal operations of the government are extensive and often complicated. It is extremely difficult, at all times, and sometimes impracticable, to settle the accounts of public offieex-s with as little delay as attends the private transactions of a mercantile establishment. But it is always in the power of an ixxdividual, who may be held responsible for the faithful conduct of a public agent, to see that his accounts are settled and the payment of any balance enfox-ced. A notice to the government, by the surety, that he is unwilling to continue his responsibility, would induce it, in most instances, to take the necessary steps for his release.
 

 By the act of congress of the 3d Max-ch 1795, the comptroller of the treasury was authorized to issue a notification to any person who had received moneys for which he is accountable to the United States, fixing a reasonable time within which vouchers for the expenditures of such moneys shall be returned ; and if default be made, costs are to be ehax-ged against the delinquent, whether in a suit judgment be given for or against him. In the same act, a revision by the comptroller of the settlement made by the auditor, is authoxúzed; and after having caused notices to be served, of items disallowed, &c., the decision is declared to be final and conclusive. This act, it is contended, has never been repealed, and that until the notice authorized by it shall have been served, a writ cannot be bx-ought against a defaulter. If there had been no subsequent acts of congx-ess on this subject, it might be impox-tant to inquire, whether the notice authorized by this act was not mex-ely directory to the officer, and essential only to subject the delinquent to the penalties provided. By the acts of the 3d March 1797, and the 3d March 1817, material changes were made in the accounting department of the government; and although the act of 1795 may not be expressly repealed, yet it is abrogated by new and substantive provisions. Under the present mode of proceeding against defaulters, the notice authorized by the act of 1795 is unnecessary.
 

 The objection made to the authenticatioxx of the transcript given in evidence, presents a question of some difficulty. As the transex-ipt has not *->nnl ^een ma<^e a Part °£ the recox-d, *the bill of exceptions must be looked ° J to, as containing the ground of objection. By the second section of the act of the 3d March 1797, it is px-ovided, “ that ixx every case of delinquency, where suit has been, or shall be, instituted, a transcript from the books and px-oceedings of the treasury, certified by the register (or under the act of the 3d Max-ch 1817, by the auditor), and authenticated under the seal of the department, shall be admitted as evidence.” “ And all copies of bonds, contracts or other papers, relating to, or connected with, the settle
 
 *193
 
 ment of any account between tbe United States and an individual, when certified as aforesaid, to be true copies of the originals on file, and authenticated under the seal of the department, may be annexed to such transcripts, and shall have equal validity, and be entitled to the same degree of credit which would be due to the original papers, if produced and authenticated in court.”
 

 The auditor certifies, that the foregoing “transcripts are true copies of the originals on file in his office.” It is the certificate of the auditor, and the seal of the department, which make the transcript evidence. If either be omitted, whatever the transcript may purport upon its face, it is not evidence. Where copies are made evidence by statute, the mode of authentication required must be strictly pursued. The legislature may establish new rules of evidence, in derogation of the common law, but the judicial power is limited to the rule laid down.
 

 There are two kinds of transcripts which the statute authorizes the proper officer to certify. First, a transcript from the “ books and proceedings of the treasury ;” and, second, “ copies of bonds, contracts and other papers, &e., which remain on file, and relate to the settlement.” Under the first head, are included charges of moneys advanced or paid by the department to the agent, and an entry of items suspended, rejected or placed to his credit. These all appear upon the books of the department. The decision made on the vouchers exhibited, and the statement of the amount, constitute, in part, the proceedings of the treasury. Under the second head, copies of papers which remain on file, and *which have a relation to the settlement, may be certified. In this case, it is essential, that the officer certify that the transcripts “ are t true copies of the originals, which remain on file.”
 

 This certificate has literally been made in the case under consideration
 
 ;
 
 and the question arises, whether it is a sufficient authentication of the transcript, from the “books and proceedings of the treasury.” A majority of the members of the court think, that the certificate is a substantial compliance with the requisitions of the statute. They connect the certificate of the auditor with the statement in the bill of exceptions, that a “ paper, purporting to be a copy from the books and proceedings of the treasury,” was offered in evidence ; and consider, that although the auditor states, that “ the foregoing transcripts are true copies of the originals on file, in his office,” the certificate can only relate to the transcript offered in evidence, and that it sufficiently authenticates it. This construction is strengthened, in their opinion, by another statement in the bill of exceptions: “that a duly certified copy of the bond sued on, was offered to be read as evidence.” Three of the judges think, that the certificate, from the language used, can only relate to the transcript which contained a copy of the bond. That it can only authenticate copies of papers, the originals of which remain on file. They consider that the books of the department cannot be said to be on file, nor are copies from the books copies from the originals. All moneys advanced or paid by the government are charged in the books of the treasury, and a transcript from these charges may be said to be copies from the original, but the credits entered are copied into the books from the vouchers rendered, and these vouchers remain on file. A transcript from the books, therefore, it is believed, cannot be said to be copies from the originals on
 
 *194
 
 file. That it is a copy from the books, which is made evidence, and not a copy of the paper, though it be on file, on which the rough draft of the settlement may have been entered. They consider that the statement in the bill of exceptions, that the transcript offered in evidence purported to be a “ copy from the books and proceedings of the treasury,” as merely descrip- * , ^ve ^le PaPer> and cannot cure the defect in *the certificate. -* That it is not the body of the transcript which is to give it validity, but the authentication required by the statute. The copy may be strictly accurate in all its parts, and come within the provisions of the law ; yet, if the seal be not affixed, or the certificate be defective, the paper cannot be received as evidence. They consider this certificate to be defective, as every word of it may be true, and yet the copies from the “ books and proceedings” may be inaccui-ate. The auditor certifies nothing from the “ books,” or the “ proceedings of the treasury;” and his language is so explicit in referring to “ copies of originals on file, in his office,” that the three judges think, that the certificate cannot, by reference, or any correct rule of construction, be made to anthenticate copies from “the books of the treasury.” The objection, that the signature of the secretary of the treasury was signed by his chief clerk, seems not to be important. It is the seal which authenticates the transcript, and not the signature of the secretary ; he is not required to sign the paper. If the seal be affixed by the auditor, it would be deemed sufficient under the statute. The question, therefore, is not necessarily involved, in deciding this point, whether the secretary of the treasury can delegate to another the power to do an official act, which the law devolves on him personally.
 

 A majority of the court think, that the transcript from the “books and proceedings of the treasury,” being admitted as evidence, did conduce to prove, not only that Kingsley acted as district paymaster, but his right so to act. In the account, he is charged as “late district paymaster,” with moneys advanced to him for pay, subsistence, forage, bounties and premiums, and contingent expenses of the army ; and credited with disbursements made, under the same heads of expenditures of the army. These transactions not only establish,
 
 primd
 
 facie, the correctness of the items charged, but show the capacity in which the defendant acted. As district paymaster he receives money, and disburses it in discharge of the duties required of paymasters. His vouchers for moneys expended prove this, and every item stated in the account goes to establish the fact, that the government recognised the official capacity which he assumed. These facts, appear-*3031 *n§ upon the face of the transcript, might *well be considered by J the jury as, at least, conducing to prove the official character of Kingsley.
 

 Although on each of the principal objections relied on as showing error in the proceedings of the district court, a majority of the members of this court think there is no error; yet the judgment of the district court must be reversed, as, on the question of reversal, the minorities unite, and constitute a majority of the court.
 

 This cause came on to be heard, on the transcript of the record, from the district court of the United States for the district of Missouri, and was argued by counsel On consideration whereof, it is ordered and adjudged
 
 *195
 
 by this court, that the judgment of the said district, court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said district court for further proceedings to be had therein, as to law and justice may appertain, and in conformity to the opinion of this court.