CHURCHILL JONES' HEIRS v. JAMES PAUL'S HEIRS.

(Case No. 944.)

1. TRESPASS TO TRY TITLE.— Where A. conveys land to B. with covenant of general warranty, and B., after taking possession, discovers that there is a superior outstanding title in a third person who is not in possession of any part of the land, and is not positively asserting his title against B., on this state of facts B. cannot abandon the land and bring suit upon the covenant of warranty.  He has no right to presume that the superior title will be asserted against him until he feels its pressure upon him.
2. SAME — BREACH OF WARRANTY.— But if, at the time of the conveyance, B. finds the premises in the possession of the holder of the superior title, the covenant for quiet enjoyment, or of warranty, will be held to be broken without any other act on his part, or on the part of the claimant.
3. SAME — LIMITATION.— A vendee brought suit upon the covenant of warranty, setting up only that his vendor, when he conveyed to him, had no title, but that the title was in another person.  *Held*, that the petition did not show that a cause of action had accrued to the plaintiff, and that a general demurrer by the defendant, setting up the statute of limitations, should have been overruled.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

Suit brought November 23, 1874, by the heirs at law of Churchill Jones against the heirs at law and devisees of James Paul, deceased.   The plaintiffs alleged that February 7, 1852, James Paul gave a bond to make to Churchill Jones a good title to two tracts of land in Milam district,— six hundred and forty acres patented to heirs of John Batterly, July 18, 1846, and about seven hundred and five acres patented to Harvey Homan, September 2, 1847, on the payment of note of Jones for $2,821, January 1, 1855, with interest

from January 1, 1854. That the note was paid, and Paul made deed to Jones, April 25, 1855, conveying the land with covenant to forever warrant and defend the title and possession. That at the time of making the deed, Paul was not lawfully seized in fee of the premises, but one Hanrick was the lawful owner thereof. That neither Paul, nor his heirs or assigns, had, though often requested, warranted and defended the title to said land, but the title was still in said Hanrick, who held adversely to plaintiffs. That the amount paid for said seven hundred and five acres to which said Paul did not have title was $1,473.45, which amount defendants were justly indebted to plaintiffs, with interest from January 1, 1854. That it was only during the year 1872 that it came to plaintiffs' knowledge that the title to said land was invalid, and paramount in another than said Paul, deceased, at the date of said deed. Said land is not occupied by plaintiffs nor any other person, nor has the same ever been occupied; is in an unsettled portion of said county, and that all the time, up to the year 1872, they had confidence in their said title, until in that year, when, on having the county surveyor establish the boundaries of same, they found it was all, except about thirty-five acres, embraced within the bounds of another and prior grant. The defendant James M. Paul demurred, on the ground that no cause of action was stated and no right to relief shown, and the defendants Wilson on the same grounds.

November 13, 1877, plaintiffs filed amended petition, stating anew their entire case; that plaintiffs were the children and grandchildren of said Churchill Jones; that Albert and George Ball were executors of James Paul, deceased, and that the administration of said estate was closed and the executors discharged in May, 1868; that the defendant Hannah Wilson received from said Paul real estate in Galveston county, worth $40,000; defendants Hannah, Robert and Matthew received real estate in said county worth $60,000, and James M. Paul worth $50,000, specifying all said property, and being about four-fifths of said estate; makes his will an exhibit; alleges that other defendants are all insolvent, and have no property liable to execution; that among the clauses of warranty in said deed from Paul to Jones are the covenant of lawful seizin at the time of the conveyance; of good right, full power and lawful authority to sell and convey; for peaceable and quiet enjoyment of the premises, and of warranty of title against all persons lawfully claiming the same; that five hundred and ninety and four-tenths acres of the Homan tract is now owned and claimed by Edward Hanrick and those who are holding under him, who are seized in fee thereof

under and by virtue of a prior valid grant to Pedro Zarza; and eighty-two and two-tenths acres of said Homan tract are claimed by William Bryant and those holding under him, who are seized in fee thereof by virtue of a survey prior to that of said Homan, and a patent duly issued thereon; and said land is in conflict with and incumbered by said prior grants, leaving only thirty-two and four-tenths acres clear under said Homan title; that one Leonard Magee is in possession of four hundred acres of said five hundred and ninety and four-tenths acres conflicting with said Homan title, and claims and holds under both the said Zarza and Bryant titles; that failure of said Homan title by reason of said conflict was not known to said Churchill Jones nor to plaintiffs until after his death; that plaintiffs are in great danger of ejection from said Homan tract, except thirty-two and four-tenths acres, by said Edward Hanrick and those claiming under him, and by said Bryant and those claiming under him, and specially by said Leonard Magee, claiming and in actual possession as aforesaid; and defendants, though requested, refused to warrant and defend said Homan title against said prior and conflicting titles; that Churchill Jones died intestate in October, 1869, leaving no minor heirs, and no debts, and there had been no administration on his estate; that the validity of said Zarza title was not adjudicated upon until December term, 1870, of the supreme court of the United States, where, in the suit of Hanrick against Neily and others, it was adjudged a valid title. Said Magee claims under said Zarza title by deed dated April 8, 1875.

The defendant James M. Paul then alleged further grounds of demurrer:

1. That the court had no jurisdiction, and suit should be brought in Falls county.

2. No dispossession or eviction shown.

3. Cause of action sued on was barred by limitation.

4. It was a stale demand, barred by laches and lapse of time.

5. No facts shown to explain or excuse the delay or lapse of time.

6. Facts averred insufficient to account for or excuse laches and delay. Possession under Zarza title and by Magee was alleged, but not alleged when possession commenced.

7. No facts or circumstances alleged such as would cause making surveys or issuing titles by the public officers of the state and produce an unknown and unsuspected conflict of boundaries, and excuse the lapse of time in acquiring knowledge thereof, and seeking remedy therefor; or as would produce the belief that some adjust-

ment thereof had not been made between the parties in their life-time; and that the demand sued on is stale and unconscionable.

9. Plaintiffs show that the demand of plaintiffs is not personal against defendants or any of them, and they show possession of the property alleged to have been received by the defendant from the estate of James Paul, deceased, adverse to plaintiffs for more than three years, and for more than five years, before suit brought, under sovereignty of the soil.

The court sustained the demurrer, on the ground that the suit was barred by limitation, being of opinion that the parties having elected to consider themselves ousted or evicted by reason of the alleged superior outstanding title, and never having been in possession, and having so long neglected to make such election, cannot now be permitted to make such election, except subject to limitations, as they have not alleged sufficient cause for their delay, and that consequently their attitude was different from that of a party suffering actual eviction, against which the statute would only run from the date of such actual eviction.

*Mann & Baker*, for appellants, cited on constructive eviction: Peck *v.* Hensley, 20 Tex., 673; Willis *v.* Primm, 21 Tex., 381. Rawle on Cov., 4th ed., in note, p. 150, cites Peck *v.* Hensley, as does also Washburn on Real Prop., vol. 3, p. 474, note 8. See, also, Greenl. Ev., § 244; Westrope *v.* Chambers, 51 Tex., 187; Simpson *v.* Belvin, 37 Tex., 675; Rawle on Cov., 4th ed., 146–7, 213; Sedgw. on Dam., 6th ed., p. 175; Macy *v.* Collins, 2 Nott & McC., 482–7; Furman *v.* Elmore, 2 Nott & McC., 487; Hamilton *v.* Couts, 4 Mass., 352. As to limitation on covenant of warranty: Rawle on Cov., 4th ed., 360, 557; Clarke *v.* Swift, 3 Me., 390.

*Ballinger & Mott*, for appellee, cited Peck *v.* Hensley, 20 Tex., 673; Westrope *v.* Chambers, 51 Tex., 178; Willis *v.* Primm, 21 Tex., 381. Gibson, C. J., Stewart *v.* West, 2 Harris (Pa.), 338, cited Rawle, 214, note 2. Ayer *v.* Britton, 53 Miss., 270; Green *v.* Irving, 54 Miss., 450; Jones *v.* Warner, 81 Ill., 343; Scott *v.* Kirkendall, 88 Ill., 465 (U. S. Ann. Dig., 1879, p. 189); Kansas Pacific R. R. Co. *v.* Dernmeyer, 19 Kan., 539; Clark *v.* Linberger, 44 Ind., 223; Blair *v.* Allen, 55 id., 409; Wood *v.* Ferncrook, 3 Thomp. & C. (N. Y.), 303; Mills *v.* Rice, 3 Neb., 76; and see Armstrong *v.* Mumford, opinion by R. S. Walker, Judge of Court of Appeals, Galveston term, 1880.

DELANY, J. COM. APP.— This is a suit upon the covenants contained in a deed of conveyance.

In the original petition the covenant of warranty alone is relied on. It is alleged that Paul, the vendor, in his deed, did covenant, for himself, his heirs and assigns, to warrant the title to Jones and his heirs and assigns.

The breach assigned is that at that time Paul was not lawfully seized of the land, but that "one Hanrick was the lawful owner thereof;" that neither the vendor nor his heirs, though often requested, have warranted or defended the title, but that it is still in Hanrick, who is holding adversely to plaintiffs.

It is further alleged that neither the vendor nor the vendee, nor any one else, has ever been in the actual possession of the land. There is no averment that Hanrick had ever asserted any title adversely to that which was held by plaintiffs. The sole cause of action was that Paul had conveyed to Jones with warranty, and that there was, at the time, a superior title outstanding in Hanrick.

Upon these allegations we do not think that plaintiffs could maintain their suit upon the warranty. In former times a vendee could not sue upon his warranty unless he had been actually evicted by one claiming under a paramount title. Now, however, the law in this respect is not so strict. If a paramount title is positively asserted against the vendee, he is not required to make an unavailing and useless resistance against a claim of title which is manifestly superior and must prevail.

Under such circumstances he may give up the land to the claimant, and resort to his warranty. But this *ouster in pais* (as it is called) does not amount to an eviction unless the superior title has been hostilely asserted. Rawle, Cov., 4th ed., p. 148.

The possession of the vendee under the title which he acquired with the warranty is not disturbed by the mere existence of the superior title; and he has no right to presume that it will be disturbed until he actually feels its pressure upon him. Moore *v.* Vail, 17 Ill., 190; Rawle, pp. 149–50, note.

This rule presupposes that the vendee has taken possession of the land and has suffered an eviction, either actual or constructive. When, however, the vendee has not taken possession, the same author lays down the following rule as best supported by reason and authority: "When, at the time of the conveyance, the grantee finds the premises in possession of one claiming under a paramount title, the covenant for quiet enjoyment or of warranty will be held to be broken without any other act on the part of either the grantee or

the claimant." This rule is put upon the ground that the possession of the holder of the superior title is an assertion of that title, and the law will not compel the grantee to commit a trespass upon the land in order to enable him to bring an action upon the warranty. Rawle, p. 154. The possession here spoken of is an actual possession. Moore v. Vail, *supra*.

It is true that in this country the real owner of land is said to be seized of the land, and constructively in possession, so that he may treat an unauthorized entry by another person as a trespass. Whitehead v. Foley, 28 Tex., 268. But inasmuch as the mere existence of a superior title in the real owner does not work an eviction of a covenantee who has entered upon the land, we hardly see how it can evict one who has received a conveyance with warranty, but has made no actual entry. Our opinion, therefore, is that the statute of limitations did not commence to run against the plaintiffs until there was actual possession of the land under the superior title. And we think this would be so, notwithstanding the fact that the deed from Paul to Jones contained a covenant of seizin as well as of warranty, and that the former covenant was broken as soon as made. Westrope v. Chambers, 51 Tex., 187. But the amendment which was filed November 13, 1877, does allege an actual possession under the superior title, and notwithstanding the vagueness of its allegations, we think that it sets forth a substantial cause of action. There was a special demurrer to this amendment because it did not show when the adverse possession commenced. This demurrer should have been sustained. As the case is now presented in the record, the suit appears to have been prematurely brought, and perhaps the plaintiffs might be taxed with the costs of the suit up to the filing of the last amendment. Kirkland v. Little, 41 Tex., 456. But we think that the court erred in sustaining the general demurrer, which set up as a defense the statute of limitations. Our opinion is that the judgment should be reversed and the cause remanded.

Reversed and remanded.

[Opinion approved February 26, 1883.]