### NEWSOM v. LANGFORD. (No. 725.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 27, 1915. On Motion for Rehearing, March 27, 1915.)

1. EVIDENCE ⊙═345—PUBLIC RECORDS—COPIES—AUTHENTICATION.

Under Rev. St. U. S. § 882 (U. S. Comp. St. 1913, § 1494), providing that copies of any record in any of the departments authenticated under the seal of the department shall be admitted in evidence equally with the original, and Act Cong. July 26, 1892, c. 256, § 3, 27 Stat. 272 (U. S. Comp. St. 1913, § 720), providing for certified copies of any records belonging to the files of the Commissioner of Indian Affairs, authenticated by the seal and certified by him or some officer acting in his stead, a copy of a part of the approved roll of a Seminole freedman, authorized by Act Cong. May 27, 1908, c. 199, 35 Stat. 313, § 3, declaring that the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence, certified by the Commissioner of the Five Civilized Tribes, but not authenticated by any seal, is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314, 1331–1360; Dec. Dig. ⊙═345.]

2. INDIANS ⊙═13—ENROLLMENT RECORDS—CONCLUSIVENESS.

Under Act Cong. May 27, 1908, c. 199, § 3, 35 Stat. 313, providing that the enrollment records of the Commissioner of the Five Civilized Tribes shall be conclusive evidence as to the age of any enrolled citizen or freedman, the testimony of an enrolled freedman as to his age held incompetent.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ⊙═13.]

3. EVIDENCE ⊙═348—RECORDS—CERTIFIED COPIES.

Under Rev. St. U. S. § 906 (U. S. Comp. St. 1913, § 1520), providing for the exemplification of records of another state, and declaring that the exemplifications properly authenticated shall be given such faith and credit as they have in the state from which they are taken, copies of deeds recorded in a sister state not authenticated as required by law, are inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1361–1383; Dec. Dig. ⊙═348.]

4. EVIDENCE ⊙═383—RECORDS OF SISTER STATES—EVIDENCE—EFFECT.

The court, admitting in evidence copies of records of a sister state duly authenticated, cannot give effect to the records accorded to them by the laws of the sister state, unless the laws are proved; for the court cannot judicially know the legal effect of the records in the sister state.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. ⊙═383.]

5. INDIANS ⊙═15—MINOR ALLOTTEES—CONVEYANCES—VALIDITY.

Act Cong. May 27, 1908, c. 199, § 6, 35 Stat. 313, providing that persons and property of minor allottees, except as otherwise provided by law, are subject to the control and jurisdiction of the probate court of Oklahoma, restricts the alienation of land by minor allottees, which restriction can only be removed by the probate court, and a deed executed by a minor allottee is void.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ⊙═15.]

6. COVENANTS ⊙═22—WHAT LAW GOVERNS.

The law of the state where land conveyed by deed is situated governs the obligation assumed by the grantor.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 21, 229; Dec. Dig. ⊙═22.]

7. COVENANTS ⊙═10—WARRANTIES—STATUTORY PROVISIONS.

Under Comp. Laws Okl. 1909, § 1202, declaring that a warranty deed made in substantial compliance with the act shall convey the whole interest of the grantor, and shall be deemed a covenant that the grantor is legally seised of the estate in fee simple, and has good right to convey, and that the premises are clear of incumbrances, a general warranty deed made in compliance with the law of Oklahoma contains, by operation of law, a warranty of seisin, as well as a warranty of full power to convey, and the covenants, if broken, are broken when made, and an actual eviction is unnecessary to consummate a breach.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 8; Dec. Dig. ⊙═10.]

---

⊙═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

8. EVIDENCE  ⟾265 — DECLARATIONS OF AGENT—ADMISSIBILITY.

Testimony of witnesses as to declarations of an agent of admissions of his principal is admissible as to the weight to be given testimony of the principal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. ⟾265.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by W. L. Langford against J. C. Newsom. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Alexander, Power & Ridgway, of Ft. Worth, and S. A. Bryant, of Memphis, for appellant. Gilbert C. Storms, of Kerrville, and H. D. Spencer, of Memphis, for appellee.

HENDRICKS, J. This cause arose as follows: On the 20th day of August, 1910, Thomas H. Thomas, a freedman of the Seminole Tribe of Indians of Oklahoma, and an allottee of land under the United States laws, conveyed to W. N. Stokes his allotment situated in Seminole county, Okl. J. C. Newsom, of Hall county, Tex., obtained the purported title of said land through mesne conveyances, and upon the 18th day of October, 1911, executed a general warranty deed to the appellee, W. L. Langford, and the latter, alleging a total failure of title, instituted this suit against the appellant upon the general warranty; also alleging certain fraudulent representations, which, on account of the action of the trial judge with reference to the condition of the title, became immaterial upon this appeal. The appellant transferred a certain stock of dry goods in consideration of the deed to him by Newsom, of the land; and relative to that part of the cause of action upon the warranty, the age of the freedman, Thomas H. Thomas, the allottee of the land, and the original grantor of the same, became a material subject of inquiry.

[1] For the purpose of proving the age and minority of Thomas H. Thomas, the following document was permitted in evidence by the trial court:

"Department of the Interior,
"Commissioner of the Five Civilized Tribes.
"Seminole Roll Freedman.

| No. | Name. | Age. | Sex. | Blood. | Year | Tribal Enrollment Band. |
|---|---|---|---|---|---|---|
| 2597 | Thomas, Thos. H. | 7 | M | | 1897 | Dosar Barkus |

"No. 402. Census card No. 803.
"This is to certify that I am the officer having custody of the approved roll of Seminole freedmen, and that the above and foregoing is a true and correct copy of that portion of said roll appearing at No. 2597, enrolled as of July, 1898, P. O., Sasakwa, Oklahoma.
              "J. G. Wright,
"Commissioner to the Five Civilized Tribes.
"C. H. Drewe, Clerk,
"Muskogee, Oklahoma, December 22, 1913."

The appellant complains that the purported certified copy was not authenticated, as required by law, to admit it in evidence, that said copy was secondary evidence, and that the original roll would have been the better testimony. Act Cong. May 27, 1908, c. 199 (35 Statutes at Large, p. 312) § 3, provides:

"That the rolls of citizenship and of freedmen of the five civilized tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

The principal contention of appellant is that the document lacks an official seal; that the enrollment records indicated in the congressional act being conclusive evidence of the age of freedmen is a new rule of evidence, and that a party seeking the advantage of said statute should be held to the strictest compliance with the statutory rule of evidence; that this particular statute, referable to the question of age, makes the enrollment records, and not copies of the same, the conclusive evidence as to the age of such persons; and that, as to certified copies, we are remitted to either section 882 of the federal statutes (volume 3, Annotated Federal Statutes, p. 26) or to section 3 of an act of Congress of July 26, 1892 (volume 3, Annotated Federal Statutes, p. 338).

The former section (882) provides that:

"Copies of any books, records, papers or documents in any of the * * * departments, authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof."

Section 3 provides for certified copies of any records belonging to the files of the Commissioner of Indian Affairs, authenticated by the seal and certified to by such officer, or some officer acting in his stead, that such copies shall be evidence equally with the originals.

We think the contention of appellant is sound, and that the court erred in admitting the particular document in evidence. We are not referred to any statute, except the general statutes mentioned, relative to the introduction of certified copies as evidence which would vitalize a purported copy of the Commissioner and elevate the same to the dignity of original testimony. Without proper authentication, unless there is some statute that would make a copy, without more, under the purported signature of the Commissioner to the Five Civilized Tribes, permissible evidence, equal to the original records, we are unable to understand how the same could rise to the dignity of original testimony. The seal in this instance, whichever statute would apply, forms a part of the authentication. In the case of Smith v. U. S., 5 Pet. 300, 8 L. Ed. 133, Mr. Justice McLean used the following language:

---

⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"It is the certificate of the auditor and the seal of the department which make the transcript evidence. If either be omitted, whatever the transcript may purport upon its face, it is not evidence. Where copies are made evidence by statute, the mode of authentication required must be strictly pursued. The Legislature may establish new rules of evidence in derogation of the common law, but the judicial power is limited to the rule laid down."

He further said:

"The objection that the signature of the Secretary of the Treasury was signed by his chief clerk, seems not to be important. It is the seal which authenticates the transcript, and not the signature of the Secretary."

While the result of the case cited and quoted from by us is a little difficult to understand, however, the court had under consideration an act which required a certain transcript to be certified to by certain officers, "and authenticated under the seal of the department." There was a division of the court on certain questions, and, though the language used may not, strictly speaking, be a part of the decision of the court, we think the enunciation is a correct principle.

Section 906 of the Revised Statutes of the United States, which provides for the exemplification of the records of other states, not pertaining to a court, prescribes that the same shall be admitted in evidence in any state or territory by the attestation of the keeper of the records, and the seal of his office annexed, together with a certificate of the Secretary of State that said attestation is in due form and by the proper officer.

In the case of Morton v. Smith, 44 S. W. 683, where certain documents were certified to by the official custodian of the records in a foreign state, but without any seal to the certificate, Chief Justice James remarked that he was unable to conceive upon what principle the same were admitted. It is true that there is a scarcity of authority directly applicable to the particular question involved, except that there are several authorities where a seal by the proper officer has been omitted, relative to a certification and authentication of a foreign judgment under the full faith and credit clause of the federal law, holding that the seal is indispensable to a proper authentication. As to the seal, the case of Milwaukee Gold Extraction Co. v. Gordon, 37 Mont. 209, 95 Pac. 995, is to the same effect.

Appellee cites the case of Starr v. U. S., 164 U. S. 627, 17 Sup. Ct. 223, 41 L. Ed. 577, wherein the Supreme Court of the United States spoke of a certain warrant of arrest as being admissible in testimony without the seal of the United States Commissioner. The question of the lack of a seal was really not involved in that case, but was involved in the case of Starr v. U. S., 153 U. S. 614, 14 Sup. Ct. 919, 38 L. Ed. 841, where the conviction in the United States court of the same defendant was reversed. In the latter cause the Supreme Court of the United States discussed the question of warrants relative to seals thereupon, making an extended research into the common law upon that subject, and held in that cause that an objection addressed solely to the want of the seal was untenable. A reading of that case exhibits the inapplicability of the principle applied by the Supreme Court to the character of document questioned in this record. However, appellant cites the case of Belford-Clark & Co. v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 520, wherein a copy of a certain letter, referable to a certain copyright, certified to as having been received by the Librarian of Congress, was declared by the Supreme Court of the United States as competent evidence, although the certificate of the officer was not under seal. The judgment of the trial court in that cause, under review by the Supreme Court of the United States, was based entirely, if we interpret the decision correctly, upon the previous findings of the referee or master, without any exceptions to the same in the record under consideration by the Supreme Court, and without assignments based upon exceptions. The court did say:

"We are of opinion that the certificate of the Librarian of Congress, * * * printed in the record, * * * was competent evidence, although the certificate was not under seal."

There were other documents under the hand and seal of the Librarian introduced in that cause relative to the copyright, which we presume were the same signature as the one appended to the unsealed instrument. We cannot infer that the court would hold, as a principle of evidence, that an ex parte instrument purporting to be a copy of a record, without proof that it was an official act, would prove itself, and prove the original record.

The purported document is headed, "The Department of the Interior." The Commissioner of the Five Civilized Tribes may be, of course, the proper custodian of the enrollment records. In the case of Ballew v. U. S., 160 U. S. 187, 16 Sup. Ct. 263, 40 L. Ed. 388, Justice White, of the Supreme Court of the United States, said that:

"The records of the Pension Office constitute part of the records of the Department of the Interior, of which executive department the Pension Office is but a constituent"

—holding that the certificates, we presume of the pension officer, and of the Secretary of the Interior, as being in substantial compliance with the statute, probably pointing the way to a correct certificate.

Again, it will be noted that the certificate is a true and correct copy of the "Approval (Approved) Roll" of Seminole freedmen, and is not a certificate of the "Enrollment Record," which latter is the record prescribed by the congressional act as the one conclusive as to age; the former conclusive as to the quantum of the blood of the party enrolled. Chief Justice Kane, of the Supreme Court of Oklahoma, in the case of Scott v. Brakel, 143 Pac. 512, presents an interesting

summary of the congressional history of the rolls, drawing a marked distinction between the "Approved Rolls" and the "Enrollment Records," and says that such a distinction was clearly recognized by Congress in the progress of the legislation on the subject. While the objection in this cause as to better testimony refers to the Approved Rolls as better testimony, and may not be sufficient to reach this question, however, following the logic of Justice Kane in the case cited, on account of the difference in the rolls, a copy from the Approved Rolls is not competent evidence as to age; the enrollment records may be in another office.

In the case of Gilbert v. Brown, 144 Pac. 359, the Supreme Court of Oklahoma held that the testimony of the custodian of the rolls was incompetent to prove the records, as to the age of a minor allottee, saying:

"This court having heretofore held that the records are conclusive as to the age of an allottee, such records are the best evidence, * * * in the absence of a showing that the same were lost or destroyed"

—reversing the case on account of the insufficiency of the testimony.

[2] Neither do we think, for the reason adduced, that the testimony of Thomas H. Thomas, as applied to this record, as to his own age, is competent.

In the case of Campbell v. McSpadden, 143 Pac. 1138, the Supreme Court of Oklahoma, in construing the federal act, again drew the distinction between the two rolls as to evidence of the quantum of blood and as to the age of the allottee, saying:

"It is evident from the record that the jury regarded this copy of the rolls, together possibly with some oral testimony that was received, as conclusive evidence that the allottee attained his majority on September 1, 1908, and that all conveyances executed prior to such date were void, and those made subsequently to such date were valid."

The court further saying:

"It follows, therefore, that the conclusion of the jury was reached upon evidence which Congress did not intend should be regarded as conclusive of the age of allottees."

We think the court must have meant that it was not testimony for any purpose in the face of the statute; at least that is our opinion as to the interpretation of the law.

[3] Appellee introduced in evidence other deeds of Thomas H. Thomas purporting to convey his allotted land, executed subsequent to the deed to Stokes, through which latter deed the chain of title in controversy here is deraigned. If the document in this record is equivalent to the status of the enrollment record as to the age of Thomas H. Thomas, the negro was not 21 years of age, according to our computation, when he deeded the land subsequently to Holman Jackson, but had attained his majority when he conveyed to May Jackson, the same land in controversy, who, appellee says, is the wife of Holman Jackson, which latter fact is not shown by the record. However, according to this rec-

ord, if the document from the approved rolls speaks the same age as the enrollment record, May Jackson has the title to the property. Appellee introduced the Jackson title, also another deed to one Fleet, executed by the freedman, subsequent to the other conveyances, and the appellant objects to all the certified copies because the original deeds were the better testimony; that there was no affidavit of loss of, or of inability to procure, the originals; and that said copies were not authenticated, as required by law, to admit them in evidence.

Referring to section 906, Revised Statutes of the United States, providing for the exemplification of records of another state as evidence (not pertinent to a court) mentioned in the preceding part of this opinion, this same statute further provides:

"And the said records and exemplifications, so authenticated, shall have such faith and credit given to them in every court and office within the United States as they have by law or usage in the courts or offices of the state, territory, or country * * * from which they are taken."

To go to the heart of this question, as to the incompetency of this testimony, we think the predicate is entirely insufficient; in fact, there is none in this record.

Chief Justice Gibson said, in the case of Brotherton v. Livingston, 3 Watts & S. (Pa.) 334, that:

"The object of the recording acts is not only to give notice, but to perpetuate the writing and the proof of its execution."

[4] What faith and credit does the law and usage prevailing in Oklahoma give to copies of records? In the case of Smith v. Smith, 1 Tex. 625, 46 Am. Dec. 121, Chief Justice Hemphill said:

"Admitting that this record is authenticated according to the act of Congress of 1834, and that it should have, therefore, such faith and credit accorded to it in our courts as, by the laws and usages of the state of Missouri, it has in the courts of that state, yet, having no knowledge of the laws and usages of that state relative to the subject-matter, we cannot determine the faith and credit to which this office copy of the record may be entitled. The form, validity, and effect of the record, and of the probate, if any be required, must depend on the provisions of some local statute, and this should have been proved before the competency or force of the evidence could be determined. We cannot judicially know, without proof of the law, whether such an instrument is authorized to be recorded—nor the legal effects of the production of a copy of such a record in a court of justice."

We are unable to find any modification of this holding in this state. The following cases are to the same effect: Peterman v. Laws, Van. Ann. Rep. 6 Leigh, bottom page 476; Milwaukee Gold Extraction Co. v. Gordon, 37 Mont. 209, 95 Pac. 996. Chase v. Caryl, 57 N. J. Law, 545, 31 Atl. 1025, by the Supreme Court of New Jersey, contains a full review of the subject. This record is entirely silent on the question of the force and effect, according to the law and usage, of certified copies of records in Oklahoma.

As to the omission from the certificate of

the secretary of state of Oklahoma that the attestation of the register of deeds is in due form and by the proper officer: Of course, if the law of that state were to show that the certificate of the register of deeds was in due form, by the proper officer, the authentication accompanying the certificate of the secretary of state, omitting the declaration of due form, may be unnecessary. However, it should be complete in other respects. Take the other federal statute, as to the proof of foreign judgments of sister states, in pursuance of the same full faith and credit clause of the United States Constitution; to the extent of our investigation, the courts are unanimous that the judge's certificate must state that the attestation of the clerk is in due form. This is considered the evidence by which the court in which the copy is offered knows that the form in use in the state in which the record was made has been complied with. Hagan v. Snider, 44 Tex. Civ. App. 139, 98 S. W. 213; Chapman v. Chapman, 74 Neb. 388, 104 N. W. 880; Craig v. Brown, Pet. C. C. 352, Fed. Cas. No. 3328; Drummond v. Magruder, 9 Cranch, 122, 3 L. Ed. 677; Folson v. Blood, 53 N. H. 434; and many other cases which could be cited along the same line.

If the certified copies are admissible in testimony upon the merits of the cause, the court erred in admitting them in the state of the proof, and on account of the condition of the certificate of the secretary of state of Oklahoma.

The appellant assigns error based upon a rejected peremptory instruction that the cause of action upon the warranty is not proven because there is no proof of eviction, nor any proof of pressure by the owner of any outstanding title, citing the leading case of Jones v. Paul, 59 Tex. 41, and the case of Land Co. v. North, 92 Tex. 75, 45 S. W. 994, by Justice Denman, of the Supreme Court of this state.

[5] At the time of the execution of the deed from Langford to Newsom, there was no actual possession of this land; at least there is no evidence to that effect. Holman Jackson, one of the freedman's grantees, testified that he claimed the possession of this land since the date of his conveyance in 1911, but, according to our computation, if the approved roll is equivalent to the enrollment records of the age of Thomas H. Thomas, as of July, 1898 (at which time he was seven years of age), Holman Jackson had no title, though the record shows that May Jackson is the owner of the title to the land. Justice Denman says, in the case of Land Co. v. North, supra, that a covenantee's title may remain unquestioned until perfected by lapse of time. The appellee says that the deed of Thomas H. Thomas, executed at the time he was a minor allottee, is absolutely void, as to which under several authorities by the Supreme Court of Oklahoma, construing sec-

tion 6 of the act of Congress of May 27, 1908, his position is sound. That section provides that persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise provided by law, be subject to the control and jurisdiction of the probate court of the state of Oklahoma. The Oklahoma authorities, which we think are correct, construe this in the nature of a restriction by Congress as to the alienation of land by minor allottees, and such restriction can only be removed through the instrumentality of the probate court, and a deed executed by a minor is void. Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755; Simmons v. Whittington, 27 Okl. 356, 112 Pac. 1018; Tirey et al. v. Darneal, 37 Okl. 606, 133 Pac. 615; and other authorities which could be cited.

Appellee urges that the entry of any grantee deraigning title through a void deed is a trespass which he does not have to commit, and hence the question of pressure by the owner of an outstanding title or threat of a suit by such owner is not applicable to this record. As stated, the record is silent as to any possession at the time Langford obtained his deed. One Tate, in this same chain of title, had a possession for a short length of time. Langford would not have ousted any person from actual possession, and we are unable to appreciate the force of appellee's argument. Justice Denman said, in the case of Land Co. v. North, supra:

"It has been held in this state that the mere existence of a superior title in another is not a breach of the warranty; the court saying that, 'inasmuch as the mere existence of a superior title in the real owner does not work an eviction of a covenantee who has entered upon the land, we hardly see how it can evict one who has received a conveyance with warranty, but has made no actual entry' "—citing Jones v. Paul, 59 Tex. 41.

Justice Denman further said in the same case:

"There can be no legal eviction or turning out. unless and until a superior title has been without the invitation of the covenantee pressed upon him. Jones v. Paul, supra. The warranty in former times could only be broken by an actual eviction from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for the covenantee to attempt to maintain the title conveyed him; e. g., where the holder of the superior title has taken actual possession or threatens suit."

[6, 7] Appellee, however, suggests that the law of Oklahoma with reference to a cause of action upon the warranty is applicable to this subject, and we agree to this proposition if the Oklahoma law is sufficiently pleaded. Appellee does plead the following section of the statutes of Oklahoma, relative to warranty deeds, and the interest conveyed by such a deed:

"Sec. 1202. Interest Conveyed by Warranty Deed. A warranty deed, made in substantial compliance with the provisions of this act, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the

part of the grantor, that at the time of making the deed he is legally seized of the indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same are clear of all incumbrances and liens, and that he warrants [to] the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same, and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

Minor, in his work on Conflict of Laws, p. 457, § 185, in discussing the question as to the proper law governing obligations arising upon covenants of title contained in deeds of conveyance of land, says:

"The better opinion seems to be that the lex situs of the land should govern, so far as covenants of title running with the land are concerned, since the grantor must be presumed to be acquainted with that law as well as his own, and to hold otherwise would tend to make the title to the land uncertain."

Wharton, in his Conflict of Laws, vol. 1 (3d Ed.) p. 627, § 276d, announces the same doctrine.

The Supreme Court of Nebraska, in the case of Riley v. Burroughs, 41 Neb. 305, 59 N. W. 932, in discussing this question, said:

"We are satisfied that the rule which allows the law of the state wherein the land is situated to prevail, and the covenant to be construed in reference to whether it runs with the land, to be determined by such law, is consonant to or with the soundest and best reasoning, and hence we will adopt it."

That court assumes a condition where land is situated in one state, and several deeds are executed with covenants of warranty running with the land between different parties residing in different states, with different laws of the states on the same subject producing confusion and uncertainty, which, to some extent, should make the law of the place where the land is situated govern.

The Supreme Court of Louisiana, in the cause of the Succession of Cassidy, 40 La. Ann. 827, 5 South. 296, which seems to be now regarded as rather a leading case on this subject, on the original hearing denied the rule that the law of the place where the land was situated should be applicable. However, on rehearing, the land being situated in Texas, and, because in this state a covenant of warranty runs with the land, that court recognized the principal that the jurisprudence of Texas as to the obligations of the parties should control, and applied what they construed to be the law of Texas with reference to the question of eviction.

The Supreme Court of Oklahoma, in the case of Faller v. Davis, 30 Okl. 56, 118 Pac. 384, Ann. Cas. 1913B, 1181, construes a general warranty deed made in substantial compliance with the provisions of their law, as containing, by the operation of section 1202, quoted above, a warranty of seisin, as well as a warranty of full power to convey the property. This record speaks a general war-

ranty deed. The article cited also constitutes the warranties mentioned as running with the land. The court in that case also said that the covenants of "good right to convey and of seisin," if broken, are broken when made, and an actual eviction is unnecessary to consummate the breach. Of course, we are not advised in the condition of this record just what section 1202 means when it speaks of "a warranty deed made in substantial compliance with the provisions of this act." However, we know a warranty deed is substantially the same wherever the common law is administered, unless restricted or enlarged by statute; but we agree with appellee's position that the law of Oklahoma, with reference to the obligations of the warranty in this case is applicable, if the ambiguity relative to the language quoted is removed.

[8] The record shows that Newsom and Hill testified, in substance, that one Hugh Spencer had a conversation with them referable to a stock of goods, and that Spencer had put in a long-distance call for Langford, and that some one came to the phone at the other end of the line, and that Spencer talked with him, and said that Langford offered to take $1,500 for the stock of goods. Appellant claims that there was sufficient evidence from which the jury could have found the agency of Spencer, and hence that the testimony of Newsom and Hill of Spencer's conversation, purporting to have been with Langford, was admissible. This testimony was offered on the question of value of the stock of goods as an admission of Langford, through his agent, as to the value of the goods, which statement appellant claims is different from his testimony as to value. The court first admitted the testimony, and then withdrew it on the objection of defendant that it was not shown that Spencer was Langford's agent. Assuming that the testimony was sufficient to present the question of Spencer's agency to the jury, so that his declarations of admissions by his principal would become admissible against him as to value, the brief of appellant does not show such condition of the stock of goods nor the time when the declaration was made as to the similarity of conditions; that such an admission of value would have been proper testimony. Of course, if Spencer was the agent of Langford to sell the goods, the testimony of the witnesses as to the declaration of the agent of the admissions of his principal as to value would have been proper, but only admissible as to the weight to be given to Langford's testimony; and, if the stock of goods spoken about by Spencer, the agent, if agency is shown, is the same stock sold by Langford to Newsom as to amount, etc., we are inclined to think that the testimony in the record is sufficient to submit the question of agency to the jury, but the jury's consideration of it would be relevant only as to the weight of the tes-

timony of Langford, and not as proof of value.

For the errors indicated, the cause is reversed and remanded.

### On Motion for Rehearing.

This court did not hold that affidavits, under the Texas statute, as a predicate to the introduction of certified copies, were necessary. The appellee makes considerable complaint that this court, as to certain questions, decided questions upon matters not embraced in the purview of objections contained in the bill of exceptions. The matters referred to are those of substantive law for the benefit of the trial court in view of a new trial, and, as we thought, in reality for the benefit of appellee, whatever conception he may have of its erroneousness.